776 F.2d 253
 JANE DOES 1 THROUGH 4, Park City Community Clinic and
Planned Parenthood Association of Utah, Plaintiffs-Appellees,
v.
STATE OF UTAH DEPARTMENT OF HEALTH, Defendant-Appellant,
Margaret M. Heckler, Secretary, U.S. Department of Health
and Human Services, Defendant,
United Families Foundation, Amicus Curiae.
JANE DOES 1 THROUGH 4, Park City Community Clinic and
Planned Parenthood Association of Utah, Plaintiffs-Appellees,
v.
STATE OF UTAH DEPARTMENT OF HEALTH, Defendant,
Margaret M. Heckler, Secretary, U.S. Department of Health
and Human Services, Defendant-Appellant,
United Families Foundation, Amicus Curiae.
 Nos. 84-2004, 84-2057.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 31, 1985.
 
 Clark C. Graves, Asst. Atty. Gen., Salt Lake City, Utah (David L. Wilkinson, Atty. Gen., with him on brief), for defendant-appellant State of Utah Dept. of Health.
 William G. Cole, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C. (Richard K. Willard, Acting Asst. Atty. Gen., Dept. of Justice, Washington, D.C., Brent D. Ward, U.S. Atty., Salt Lake City, Utah, and Leonard Schaitman, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., with him on brief, Daniel Kiser and Carol Conrad, Senior Attys., Dept. of Health and Human Services, Rockville, Md., and Joel M. Mangel, Deputy Asst. Gen., Counsel for Public Health, Dept. of Health and Human Services, Washington, D.C., of counsel), for defendant-appellant Margaret M. Heckler, Secretary, U.S. Dept. of Health and Human Services.
 Jeffrey Oritt, Salt Lake City, Utah (Wayne McCormack, Salt Lake City, Utah, James Feldesman and Jacqueline Leifer of Boasberg, Klores, Feldesman & Tucker, Washington, D.C., with him on brief), for plaintiffs-appellees.
 Michael A. Neider and Brian C. Johnson of Mortensen & Neider, Salt Lake City, Utah, filed a brief on behalf of amicus curiae United Families Foundation.
 Before HOLLOWAY, Chief Judge, SETH, Circuit Judge, and CROW, District Judge*.
 SETH, Circuit Judge.
 
 
 1
 For the period of time in issue the United States Department of Health and Human Services awarded all Title X funds for Utah to the Utah Health Department for administration by that agency. Notices for several objective grant reviews by the regional authority of HHS were issued which would have included consideration of nongovernmental agencies in Utah seeking to administer some of the funds. However, these were cancelled from Washington by a Deputy Assistant Secretary of Health and the entire amount was then provided to the Utah Health Department.
 
 
 2
 The individual plaintiffs, and also the two private organizations which were providing services within the scope of Title X, then brought this action for an injunction. Plaintiffs sought to enjoin the Health Department from applying to minors the condition of parental consent before providing services in the administration of the Title X grant. The suit also sought to require the HHS to comply with the requirements of the applicable statutes and of Title X to prevent discrimination by reason of age.
 
 
 3
 There was litigation in the District of Columbia Circuit commencing in 1982 challenging a grant to the Utah Department of Health of the entire amount of Title X funds to the state agency. This was brought by the Planned Parenthood Association of Utah. The District of Columbia Court of Appeals denied the plaintiff relief on the basis that the Department of Health and Human Services could rely on the state's representations that Title X services would be provided to the more than 12,000 persons who received such services in Utah. Planned Parenthood Ass'n of Utah v. Schweiker, 700 F.2d 710 (D.C.Cir.). The court there indicated that HHS could see that Title X was complied with as to parental consent for minors. The court further stated that HHS could terminate the grant if the assurances of the state were not fulfilled.
 
 
 4
 This action was thereafter filed in Utah on the basis that the state parental consent requirements were enforced contrary to the assurances as to Title X.
 
 
 5
 The Title X funds with which we are concerned are federal funds provided under the Public Health Service Act, 42 U.S.C. Sec. 300, to public or nonprofit private organizations that provide family planning services including services for adolescents. 42 C.F.R. Sec. 59.5(a)(4) provides that these services must be provided without regard to age. Funds in Utah in prior years had been used by the Utah Department of Health and by the two organizations which are plaintiffs herein.
 
 
 6
 During the course of the trial proceedings herein the Court of Appeals for the District of Columbia and for the Second Circuit both held that the regulations on the subject of parental consent proposed by HHS on January 16, 1983 and to be effective in February 1983, were invalid. State of New York v. Heckler, 719 F.2d 1191 (2d Cir.), and Planned Parenthood Federation of America v. Heckler, 712 F.2d 650 (D.C.Cir.). These regulations would have required Title X grantees to enforce or abide by state laws requiring consent of parents of minors under the age of 18 years before Title X services would be provided.
 
 
 7
 The trial court based its determination on statutory law and the departmental regulations. The court found in Finding 22 as follows:
 
 
 8
 "Prior to and after the award of the grant in question, the Health Department has imposed a prior written parental consent requirement on unmarried minors seeking family planning services under the Health Department's Title X grant."
 
 And in Finding 24:
 
 9
 "HHS has been aware of the Health Department's imposition of a parental consent requirement on Title X services at least since January 1983."
 
 
 10
 The trial court thus found a continued violation of Title X. In our view, the action of HHS was a continued attempt to enforce the provision of its regulations which had been rejected by the court. The trial court concluded (No. 4(a)):
 
 
 11
 "The State Health Department has conceded that it is (and has been) imposing parental consent requirements on Title X services to minors. Title X prohibits the imposition of conditions that would have the effect of discriminating against adolescents in the rendition of services and of breaching confidentiality in rendering those services. Both the D.C. Circuit and the Second Circuit came to that conclusion in the cases cited above. Moreover, the regulations in effect throughout this litigation have been interpreted by HHS to prohibit the imposition of parental consent or notification requirements. 42 C.F.R. Secs. 59.2, 59.5(a)(4), 59.11; 47 Fed.Reg. 7699 (1982)."
 
 
 12
 The trial court found the typical requirements for a mandatory injunction to be present and we agree. It would not seem necessary to consider the standards adopted by some courts when statutory violations are found.
 
 
 13
 This court, the trial court and all parties acknowledge the broad discretion placed in HHS as to the award of grants (42 U.S.C. Sec. 300a-4) as held in Apter v. Richardson, 510 F.2d 351 (7th Cir.), and many other decisions. The agency is required to make grants which in its judgment will best accomplish statutory goals. However, as always, the agency action must not be in violation of statutory authority. See Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694, and Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616. In this regard we again observe that HHS is for all practical purposes here attempting to perpetuate its proposed regulation as to consent heretofore held invalid as a violation of Title X.
 
 
 14
 The position of HHS on this appeal is that it "does not contest" that Title X services must be made available to eligible persons in Utah "including minors who do not obtain parental consent." It also "does not challenge" the trial court's order herein which found that Title X "prohibits the imposition of conditions that would have the effect of discriminating against adolescents in the rendition of services and of breaching confidentiality in rendering those services." These are issues basic to the determination of this appeal, and we must assume that the HHS acquiesces in the trial court's position on the two points. There is no nolo contendere position in these circumstances.
 
 
 15
 The HHS would have the trial court and this court rely on the creation of a "referral system" whereby minors, for whom the state declines to provide services because no parental consent was provided, could be sent by the state to a nongovernmental group such as the plaintiff organizations. We do not see how the possibility that such an arrangement could be created can serve as a basis to decide this appeal. This conclusion seems reasonable in view of the fact that the plaintiff organizations, which apparently are the principal providers of such services in urban areas, take the position that they would not participate in such a system. They would not do so, they say, because in their view it would be a violation of Title X.
 
 
 16
 The HHS on appeal nevertheless urges strongly that the possibility of the creation of such a referral system would be a solution to this litigation. Apparently in the past there were individuals who had been refused services at the state facilities who were sent by the state to private organizations. We see nothing in the record which would enable these instances to be characterized as a "referral system." There is certainly nothing now in existence which could be characterized as a "referral system" as there is no mutual arrangement of any kind. As a matter of fact there simply never was such a "system" according to the record.
 
 
 17
 The HHS in this argument as to a "referral system" seeks to argue from unrelated situations represented by the affidavit of Susan K. Rudy which presented only circumstances where the state facility was unable to furnish a particular service to anybody. There is no evidence of any situations where services were provided to some persons in the same category but refused to others and those refused were referred somewhere else.
 
 
 18
 The trial court of the referral argument and the plan proposed by defendants, said:
 
 
 19
 "The State 'referral plan' is based not on the providers' ability to serve an eligible patient, but on the State's refusal to serve an eligible patient. Thus, the defendants' reliance on the referral arrangements authorized by the regulations and cited by Ms. Rudy is misplaced."
 
 
 20
 We agree fully with the trial court's characterization of a "referral system" argument. It is nothing more than to suggest what should be done after a refusal of services based on impermissible standards.
 
 
 21
 We do not see a preemption issue in this case. The state act and the rules enforced by the state agency for parental consent instead seek to add an additional condition or requirement sought to be placed by the state on eligibility for Title X services, or grants, by Congress. Utah is free to apply parental consent requirements in the use of its own funds.
 
 
 22
 The State Department of Health advances several arguments on appeal which were not presented to the trial court or are not really in issue. Among these is the argument that the state malpractice statute is a consent statute. We fail to see its applicability as the question whether minors in Utah can or cannot consent to medical treatment is not in issue. Nor is the constitutionality of Senate Bill 3 (Utah Code Anno. Sec. 76-7-321 (1981)) in issue. It is apparent that if mandatory parental consent was required for all contraceptive services to minors there would be problems with at least City of Akron v. Akron Center, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687.
 
 
 23
 The state also places reliance on the preemption doctrine but, as indicated above, it is not here involved.
 
 
 24
 We must conclude that the issuance of the injunction was based on the facts and in accord with the prevailing law.
 
 
 25
 AFFIRMED.
 
 
 
 *
 Honorable Sam A. Crow, United States District Judge for the District of Kansas, sitting by designation