**PLANNED PARENTHOOD ASSOCIA-TION OF UTAH, Plaintiff,**

v.

**Suzanne DANDOY, M.D., Executive Director, Utah State Department of Health, in her official capacity, Defendant.**

**No. C85–1133G.**

United States District Court,
D. Utah, C. D.

May 1, 1986.

Jeffrey R. Oritt, Wayne McCormack, Salt Lake City, Utah, for plaintiff.

Clark C. Graves, Atty. General, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

The matter came on regularly for hearing on March 18, 1986, on cross-motions for summary judgment. Plaintiff was represented by Jeffrey R. Oritt and Wayne McCormack, and defendant was represented by Clark C. Graves, Assistant Attorney General for the State of Utah. Both parties submitted exhaustive memorandums of law and the Court heard oral argument, after which both motions were taken under advisement.

## FACTUAL BACKGROUND

In this action, Planned Parenthood challenges the validity of a Utah Law known as Senate Bill 3 (1981) which requires that "no public funds shall be used to provide contraceptive ... services to an unmarried minor without the prior written consent of the minor's parent or guardian." Utah Code Ann. 76–7–322 (Supp.1985) (hereinafter cit-

ed as S.B. 3).[1] Plaintiff seeks summary and declaratory judgment under 42 U.S.C. § 1983 and § 1997 that S.B. 3 is in conflict with the express terms of Title XIX of the Social Security Act ("Medicaid") and is therefore preempted by that legislation. Plaintiff further seeks to enjoin the defendant from enforcing S.B. 3, thereby requiring release of Medicaid funds to plaintiff for family planning and birth control services which may be rendered in the future to unemancipated minors without proof of parental consent. Defendant also seeks summary judgment urging that S.B. 3 is not in conflict with Medicaid, and that even if it is, it cannot be "preempted" because Medicaid is a voluntary program. Additionally, defendant asserts that if plaintiff is entitled to any relief, the sole remedy available to it is an injunction preventing the Secretary of the Department of Health and Human Services ("HHS") from providing Medicaid funds for the State of Utah.

The following facts are uncontroverted:

1. In full, S.B. 3 provides:
   CONTRACEPTION OR ABORTION SERVICES OR DEVICES
   AN ACT RELATING TO CONTRACEPTION AND ABORTION; PROVIDING THAT NO PUBLIC FUNDS SHALL BE USED TO PROVIDE CONTRACEPTIVE OR ABORTION SERVICES TO AN UNMARRIED MINOR WITHOUT PARENTAL OR CUSTODIAL CONSENT; AND PROVIDING THAT NO PUBLIC AGENCY SHALL APPROVE ANY APPLICATION FOR PUBLIC FUNDS FROM AN ORGANIZATION THAT PROVIDES CONTRACEPTIVE OR ABORTION SERVICES TO AN UNMARRIED MINOR WITHOUT PARENTAL OR CUSTODIAL CONSENT.
   *Be it enacted by the Legislature of the State of Utah:*
   Section 1. Contraceptive and abortion services—Definitions.
   As used in this act:
   (1) "Contraceptive services" means any material, program, plan, or undertaking which provides instruction on the use of birth control devices and substances, encourages individuals to use birth control methods, or provides birth control devices.
   (2) "Abortion services" means any material, program, plan, or undertaking which seeks to promote abortion, encourages individuals to obtain an abortion, or provides abortions.
   Section 2. Public funds for provision of contraceptive or abortion services restricted.

1. Plaintiff Planned Parenthood Association of Utah ("Planned Parenthood") is a Utah non-profit corporation. It is a certified Medicaid provider which provides family planning services to patients including unemancipated, unmarried minors (under the age of 18) who are not military personnel. The family planning services include the distribution of prescription and non-prescription contraceptives to both male and female minor patients. Planned Parenthood examines its family planning patients, provides group counselling and conducts educational programs.

2. Defendant Suzanne Dandoy, M.D. is the Executive Director of the Utah Department of Health. As such, she is charged with enforcing the health laws of the State of Utah including S.B. 3, and for administering federal assistance health programs such as Medicaid pursuant to Utah Code Ann. §§ 26–1–8 to –18 (Supp.1985).

3. The State of Utah participates in Medicaid, a federally subsidized health care program under Title XIX of the Social Se-

   No public funds shall be used to provide contraceptive or abortion services to an unmarried minor without the prior written consent of the minor's parent or guardian.
   Section 3. Public funds for support entities providing contraceptive or abortion services restricted.
   No public agency shall approve any application for public funds to support, directly or indirectly, any organization or health care provider that provides contraceptive or abortion services to an unmarried minor without the prior written consent of the minor's parent or guardian. No institution shall be denied state or federal funds under relevant provisions of law on the ground that a person on its staff provides contraceptive or abortion services in that person's private practice outside of such institution.
   Section 4. Violation of restrictions on public funds for contraceptive or abortion services as misdemeanor.
   Any agent of a state agency acting alone or in concert with others who violates section 2 or 3 is guilty of a class B misdemeanor. S.B. 3 was amended in 1983 to define a "minor" as any person under the age of 18 who is not otherwise emancipated, married, or a member of the armed forces of the United States. H.B. 343 (1983), codified at Utah Code Ann. 76–7–321(3) (Supp.1985).

curity Act, 42 U.S.C. § 1396 *et seq.* Medicaid is a comprehensive federal program intended to provide basic health care services to eligible recipients who cannot otherwise afford medical assistance.

4. The scope of medical assistance to be provided for Medicaid under Title XIX is defined to include:

family planning services and supplies furnished (directly or under arrangements with others) to individuals of childbearing age (including minors who can be considered to be sexually active) who are eligible under the State plan and who desire such services and supplies....

42 U.S.C. § 1396d(a)(4)(C).

5. The administrative scheme under Medicaid calls for a "single state agency" to administer medicaid services in conformity with Title XIX and regulations promulgated thereunder. 42 U.S.C. § 1396a(a)(5). The Utah State Department of Health is the state agency responsible for administering Medicaid in Utah.

6. In 1976, the Supreme Court of the United States upheld a decision of this Court invalidating a Utah State Department of Health regulation which required parental consent as inconsistent with the Social Security Act.[2]

7. Later in 1976, Utah enacted the Utah Health Care Malpractice Act.[3]

8. On May 21, 1984, the Utah State Department of Health issued a document styled "Medicaid Information Bulletin Number 84–37." The bulletin requires all medicaid providers to attach written parental consent forms to reimbursement claims for minor patients as a precondition of payment.

9. The Utah State Department of Health has not reimbursed Planned Parenthood for family planning services rendered to minor patients without parental consent since the said Bulletin was issued.

This case involves the question whether Utah's S.B. 3, which requires parental consent before contraceptive services can be provided to sexually active unemancipated minors, becomes unenforceable when the State of Utah participates in the federal Medicaid program. Several arguments are presented which we will consider separately.

### UTAH'S "CONSENT STATUTE"

■ We will first address defendant's argument that a "general consent law" has been enacted in Utah which harmonizes the participation of the State of Utah in the federal Medicaid program by clearly requiring parental consent in connection with at least prescriptive contraceptive devices. Defendant urges that a general consent statute which mandates parental consent for family planning services as well as other kinds of medical care would not be violative of the requirements of Title XIX. Defendant refers the court to several provisions of the Medicaid statute which stipulate that medical care is to be provided in accordance with the scope of medical practice as prescribed by state law. For example, 42 U.S.C. § 1396a(a)(13) requires that a state medicaid plan must provide for payment of health care providers who render medical services under Medicaid "in conformity with State and Federal laws." Defendant argues that part of the Utah Health Care Malpractice Act, enacted after prior litigation which addressed this matter,[4] provides such a general consent law.[5]

---

**2.** *T.H. v. Jones,* 425 F.Supp. 873 (D.C.Utah 1975), *aff'd on statutory grounds,* 425 U.S. 986, 96 S.Ct. 2195, 48 L.Ed.2d 811 (1976).

**3.** U.C.A. 78–14–5.

**4.** Defendant relies on footnote 4 of the *T.H. Jones* opinion (see Fn. 2, supra), which quotes then HEW Associate Regional Commissioner Ray Myrich as stating that "... where state law stipulates a specific age of consent [family planning] services may not be provided any more

than any medically related service without parental consent," and that the Court in *Jones* found no state law specifically stipulating an age of consent.

**5.** Plaintiff asserts that the Tenth Circuit has already ruled that § 78–14–5 is not a general consent statute, citing *Doe v. State of Utah Department of Health,* 776 F.2d 253 (10th Cir. 1985). Defendant asserts and we agree that the Tenth Circuit did not consider the issue to be before it. 776 F.2d at 256.

We disagree. The law in question merely sets forth the factual showing required for a patient to recover damages from a health care provider for failure to obtain "informed consent," and establishes a safe harbor for health care providers relative to informed consent in the context of civil malpractice litigation.[6] Whatever the merit or lack of merit, or possible impact such a general consent statute might have, and whether the federal legislation would have to be amended to permit the operability thereof, we do not here consider since we hold that the Utah statute does not constitute such a general consent law.[7] Accordingly, we must address the conflict, if any there be, between S.B. 3 and federal law, without reference to any other so-called "general consent" statute.

## PREEMPTION—CONFLICT WITH FEDERAL LAW

■ Plaintiff argues that S.B. 3 is "preempted" by federal law. Where, as here, the state law deals with domestic relations, the court must determine whether "Congress has positively required by direct enactment that state law be preempted," *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979) [quoting *Westmore v. Markoe*, 196 U.S. 68, 77, 25 S.Ct. 172, 175–76, 49 L.Ed. 390 (1904)], and whether the state law does "major damage" to "clear and substantial" federal interests. *Hisquierdo*, 439 U.S. 581, 99 S.Ct. 808 [quoting *United States v. Yazell*, 382 U.S. 341, 352, 86 S.Ct. 500, 506–07, 15 L.Ed.2d 404 (1966)]. Where these tests are met, even domestic relations

legislation, such as S.B. 3, is subject to preemption:

> [n]otwithstanding the limited application of federal law in the field of domestic relations generally, this Court, even in that area, has not hesitated to protect, under the Supremacy Clause, rights and expectancies established by federal law against the operation of state law, or to prevent the frustration and erosion of the congressional policy embodied in the federal rights. *Ridgway v. Ridgway*, 454 U.S. 46, 54, 102 S.Ct. 49, 54, 70 L.Ed.2d 39 (1981) (citations omitted).

■ Defendant argues that because Medicaid is a voluntary grant-in-aid program, the question of preemption is not before the Court. It is true that there is no requirement that the state participate in the program, and if the state voluntarily were to elect not to so participate no question of preemption would be presented. However, once the state enters the program and asserts considerations which may conflict with federal law, if indeed such conflict exists, the Supremacy Clause if not the doctrine of preemption applies. In *Planned Parenthood Federation of America v. Heckler*, 712 F.2d 650 (D.C.Cir.1983), the Department of Health and Human Services ("HHS") argued that a regulation it promulgated under Title X was simply a clarification and that Title X did not "preempt" state general consent laws. The Court agreed that technically preemption does not apply to such voluntary programs, but that the Supremacy Clause, bringing the same result, does apply:

> Appellants argue that the regulation merely clarifies the fact that state law

---

**6.** The statute requires as a condition to recovery of damages proof by a patient in a malpractice action based upon lack of informed consent that the health care rendered carried with it a "substantial and significant risk of causing the patient serious harm ..." 78–14–5(1)(d).

The statute further provides in the context of informed consent as relates to damage suits by a patient:

(4) The following persons are authorized and empowered to consent to any health care not prohibited by law:

(a) Any parent, whether an adult or a minor, for his minor child;

*     *     *     *     *     *

(e) Any patient eighteen years of age or over; (U.C.A. 78–14–5(4)).

**7.** We need not and do not reach plaintiff's arguments that even if the statute is a "general consent statute" it is nonetheless invalid to the extent that it conflicts with Title XIX, and that in any event the family planning services provided by Planned Parenthood are not subject to the consent requirements because they do not carry with them a "substantial and serious risk of causing the patient serious harm."

has not been "preempted" by federal law. See Brief for appellants at 30–32. This argument is misplaced. This case presents no direct conflict between two bodies of law, one state and one federal. We have only a *voluntary* federal funding program with specific eligibility requirements. The law on this issue is clear: even if Congress permits the states to impose additional rules as to eligibility for federal funding, those rules must be consistent with the federal standards or else be held invalid under the Supremacy Clause. *See Townsend v. Swank,* 404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L.Ed.2d 448 (1971). *Id.* at 664.

In *Doe v. State of Utah Dept. of Health,* 776 F.2d 253 at 256 (10th Cir.1985), the Tenth Circuit, dealing with another federal grant in aid program, issued an injunction preventing enforcement of a Utah parental consent requirement. The court there said:

> [3] We do not see a preemption issue in this case. The state act and the rules enforced by the state agency for parental consent instead seek to add an additional condition or requirement sought to be placed by the state on eligibility for Title X services, or grants, by Congress. Utah is free to apply parental consent requirements in the use of its own funds.

776 F.2d at 256. We apply the same principle here. Manifestly, S.B. 3 is not per se in conflict with federal law, but may come into conflict when Utah participates in Medicaid. Accordingly, we must consider whether Utah's participation in Medicaid brings into play a conflict which would render S.B. 3 unenforceable.

## CONFLICT BETWEEN STATE AND FEDERAL LAW

Title XIX of the Social Security Act provides for:

> family planning services and supplies ... to individuals of child-bearing age (including minors who can be considered to be sexually active) who are eligible under

the State plan and who desire such services and supplies.[8]

. . . . .

The gravamen of plaintiff's argument as to Utah's participation in Medicaid is that this statute creates a federal policy mandating confidential medicaid family planning services to unemancipated minors, and that engrafting the parental consent requirement of S.B. 3 does major damage to the federal interests so mandated. Plaintiff's position is consistent with action taken by a three judge panel in this District which held that Utah Department of Health regulations which required parental consent for minors as a prerequisite to receiving family planning service either under the Aid to Families with Dependent Children ("AFDC") or Medicaid were in conflict with provisions of the Social Security Act and were therefore unenforceable. *T.H. v. Jones* at 878. The Court observed as to the state's obligation to provide family planning assistance to sexually active minors that the history and language of Title XIX established only two preconditions:

> First, such persons must be eligible under the standards of section 1396a(a)(10); second, such persons must voluntarily request assistance.

*Id.* at 877.

The Court then held that any further requirement engrafted by the state impermissibly interferes with the statutory intent of Title XIX and is unenforceable. The Supreme Court upheld the Panel's decision on this ground. 425 U.S. 986, 96 S.Ct. 2195, 48 L.Ed.2d 811. A similar result was reached by Judge Winder in *Planned Parenthood v. Matheson,* 582 F.Supp. 1001 (D.C.Utah 1983). (Holding that state law requiring provider to give notice to a minor's parent or guardian before providing such minor with contraceptives is preempted by federal law).

We hold that S.B. 3 impermissively engrafts an eligibility requirement on Medicaid services in violation of Title XIX of the Social Security Act, and that Utah's

8.   42 U.S.C. § 1396d(a)(4)(C).

participation in the Medicaid program brings into play a conflict with federal law which renders S.B. 3 unenforceable by reason of the Supremacy Clause.

## REMEDY

 Defendant next argues that even if S.B. 3 is in conflict with Title XIX, the sole remedy available to plaintiff is an injunction preventing the State of Utah from receiving Medicaid funds in the future. We consider this assertion to be in error. The court in *T.H. v. Jones* was presented with precisely the same argument. Citing *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), the *Jones* court said:

> The [Supreme] Court has consistently acknowledged the right of recipients of federal assistance to challenge the validity of state restrictions affecting the scope of and conditions placed upon their receiving federal assistance. Jones, 425 F.Supp. at 873.

The court then declared the regulations at issue to be in violation of the federal statute and enjoined the enforcement thereof. *Id.* at 882. Other courts have agreed. In *Jane Does v. Utah Dept. of Health,* 776 F.2d 253, the Tenth Circuit held that injunctive relief substantially similar to that sought here was appropriate under Title X, another voluntary federal program.

In defendant's final memorandum, it is conceded that the remedy sought by plaintiffs here has been permitted in numerous other cases, but reliance is placed upon *Pennhurst State School v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1967). However, the Court in *Pennhurst* recognized that states may be enjoined from "... enforcing any provisions which conflict with federal law in violation of the Supremacy Clause ..." *Pennhurst* at 29, 101 S.Ct. at 1546 [citing *Carleson v. Remillard,* 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972)]. We therefore reject defendant's contention on this issue.

Plaintiff's motion for summary judgment is hereby granted; defendant's Motion for summary judgment is denied. Counsel for plaintiff is directed to submit a proposed Judgment in accordance with this decision within fifteen (15) days of the date hereof.

IT IS SO ORDERED.