**Glenda JACKSON, Individually and on behalf of others similarly situated, Plaintiff,**

v.

**William R. RAPPS, Individually and as Director of the Missouri Division of Child Support Enforcement, Defendant.**

No. 89–4022–CV–C–5.

United States District Court,
W.D. Missouri, C.D.

Aug. 13, 1990.

---

**8.** Plaintiff did not allege diversity of the parties as an independent source of federal jurisdiction.

Jim R. Bruce, Kennett, Mo., for plaintiff.

William Cornwell, B.J. Jones, Missouri Atty. Gen.'s Office, Jefferson City, Mo., for defendant.

## ORDER

SCOTT O. WRIGHT, District Judge.

Before this Court are the cross-motions of plaintiff Glenda Jackson and defendant William R. Rapps for summary judgment on the issue of liability, in an action against defendant William R. Rapps, individually and as Director of the Missouri Division of Child Support Enforcement. This cause of action concerns defendant's method of calculation of Ms. Jackson's "state debt" for money allegedly owed to the state as reimbursement for the state's Aid to Families of Dependent Children payments to Ms. Jackson's former spouse. Ms. Jackson alleges that the Director's actions are in violation of the United States Constitution and federal law. Ms. Jackson alleges, in the alternative, that the Director's actions are in violation of state statute. In accordance with the reasoning in this order, this Court grants plaintiff's motion for summary judgment on the issue of liability and denies defendant's motion for summary judgment.

## I. FACTUAL BACKGROUND

### A. Statutory Framework

The State of Missouri, though the Division of Child Support Enforcement ("DCSE"), participates in the joint state/federal Child Support Enforcement Program under Title IV–D of the Social Security Act, 42 U.S.C. § 651–665 (1988), and the Federal Regulations promulgated pursuant to the Act, 45 C.F.R. § 302.1–307.12 (1989). Under federal law, the DCSE is responsible for the administration of the program in the State of Missouri. The State is required to adopt a state plan in conformity with the Federal Regulations established for the administration of the program by the United States Department of Health and Human Services. 45 C.F.R. § 302.1–302.12 (1989).

The Federal Regulations and state statutes require that all applicants for Aid to Families with Dependent Children ("AFDC") assign to the State any rights to support owed from any other person, which includes child support payments. 45 C.F.R. § 232.11(a)(1) (1989); Mo.Rev.Stat. § 208.040 (Supp.1990). The Federal Regulations and the state statutes also provide methods for determination of the amount of any support owed. The Federal Regulations provide two alternative methods of determining the amount owed:

(a) the support rights assigned to the IV–D agency pursuant to [45 C.F.R] § 232.11 of this title or section 471(a)(17) of the Act constitute an obligation owed to the State by the individual responsible for providing such support. Such obligation shall be established by:

(1) Order of a court of competent jurisdiction,

(2) Other legal process as established by State law, such as an administrative hearing process or a legally enforceable and binding agreement;

\*　　\*　　\*　　\*　　\*　　\*

(b) The amount of the obligation described in paragraph (a) of this section shall be:

(1) The amount specified in the order of a court of competent jurisdiction which covers the assigned support rights; or

(2) If there is no court order, an amount determined by the IV–D agency as part of the legal process referred to in paragraph (a)(2) of this section in accordance with a formula which meets the criteria prescribed in § 302.53.

45 C.F.R. § 302.50 (1989).

Missouri's state plan for child support enforcement, as originally enacted in response to the federal mandate, provided that where no court order addressed the duty to provide support, that the State would administratively establish support arrearages to be referred to as the "state debt." The original Missouri statute did not require the use of a formula, but stated

that the "state debt" would be equal to the amount of public assistance paid out. As originally enacted in 1982, § 454.465 provided:

[P]ayment of public assistance by the division ... creates an obligation, to be called "state debt," which is due and owing to the division ... in an amount equal to the amount of public assistance so paid.

The Missouri statute was amended in 1984 after initiation of a suit challenging the constitutionality of the statute based on failure to use the federally mandated formula. The current Missouri statute has language similar to the federal statute, except that under the state statute the obligation, or "state debt," is not determined by a formula, but is set by the Director of the DCSE:

(1) Where there exists a court order directed to a parent which covers that parent's support obligation to a dependent during a period in which the Division of Family Services provided public assistance to or for the benefit of that dependent, the state debt of the parent shall be an amount equal to the obligation ordered by the court including arrearages and unpaid medical expenses, up to the full amount of public assistance paid, or

(2) Where no court order covers a parent's support obligation to a dependent during a period in which the Division of Family Services provided public assistance to or for the benefit of the dependent, the state debt may be set or reset by the director [of the Division of Child Support Enforcement or his designee] in an amount not to exceed the amount of public assistance so provided by the Division of Family Services.

Mo.Rev.Stat. §§ 454.465.1(2) & 454.460(4) (Supp.1990).

### B. Facts of the Case

Plaintiff Glenda Jackson is the mother of three children. Ms. Jackson was divorced from the father of her children on April 13, 1983. The father was awarded custody of the three minor children. Ms. Jackson was unemployed at that time, and neither she nor the father were ordered to pay child support.

Ms. Jackson subsequently filed a motion to modify the custody order by awarding to her the custody of the children along with child support payments. Ms. Jackson was granted leave of court to file her motion as a "poor person" without payment of a filing fee.

The circuit court on September 9, 1983 denied Ms. Jackson's motion subject to modifications and conditions provided in the order. One of the modifications allowed Ms. Jackson weekend visitation with the children. Another modification was a requirement mistakenly entered by the court that Ms. Jackson was to pay the father the sum of ten dollars ($10.00) a month per child for the three children while they were exercising visitation with Ms. Jackson.

The circuit court thereafter on October 4, 1983 entered a *nunc pro tunc* order stating that the September 9, 1983 order contained a "scrivener's error." The October 4, 1983 order stated that the September 9, 1983 order should have required the father to pay the mother, Ms. Jackson, the sum of ten dollars ($10.00) per month per child for the three children while they were exercising visitation with the mother, Ms. Jackson. The order did not require Ms. Jackson to pay child support.

The father began receiving AFDC payments in January of 1986. The prosecuting attorney for Dunklin County subsequently wrote to Ms. Jackson on October 31, 1988, stating the Division of Child Support Enforcement ("DCSE") had contacted him and requested that he seek a modification of Ms. Jackson's divorce decree to require her to pay child support for her three children. Ms. Jackson had remarried at this time, and was working outside the home. Counsel for Ms. Jackson states that the assistant prosecutor for Dunklin County informed him on January 9, 1989 that the DCSE would not be seeking child support from Ms. Jackson.

The Director of the Missouri Division of Child Support Enforcement, William R. Rapps, ("Director Rapps"), on January 4,

1989 issued a Notice of Finding of Financial Responsibility, asserting that Ms. Jackson was responsible for repaying the state $11,064.00 as a "state debt" under §§ 454.-460—454.510 of the Missouri statutes. The "state debt" was reimbursement for the public assistance (i.e. AFDC and Medicaid) paid out by the State on behalf of Ms. Jackson's children.

On April 26, 1989 the Missouri Department of Revenue intercepted the joint income tax refund of Ms. Jackson and her current husband in order to satisfy the $11,064.00 "state debt" claimed by the DCSE. Plaintiff Jackson then filed the present action on January 26, 1990.

Director Rapps subsequently entered an administrative default order for $11,064.00 and ordered Ms. Jackson to maintain medical insurance on the children. The administrative order was filed in the Dunklin County Circuit Clerk's office, and has the effect of a lien on property. Mo.Rev.Stat. § 454.465 (1986).

Director Rapps issued to Ms. Jackson's employer on March 23, 1990 an order requiring her employer to withhold $424.40 per month up to fifty per cent (50%) of Ms. Jackson's disposable earnings. The order stated that Ms. Jackson owed a debt to the state of $13,495.00, and support of $187.00 per month for the two remaining children (one child had reached the age of eighteen in the interim, and was no longer eligible for child support).

Ms. Jackson filed her claims as a class action under 42 U.S.C. § 1983, alleging violation of the due process and supremacy clauses of the United States Constitution. The constitutional violations are alleged to be the result of state action which does not comply with applicable federal law. Ms. Jackson alternatively alleges that the actions of Director Rapps do not comply with the state statute. The complaint demands declaratory and injunctive relief, compensatory damages in the amount $100,000.00, punitive damages in the amount of $750,-000.00, and reasonable attorney's fees and costs under 42 U.S.C. § 1983.

## II.  ANALYSIS

### A.  Standard for Summary Judgment

Summary judgment can be granted only if there is no genuine dispute as to material fact and if the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The moving party has the burden of showing that there is no genuine dispute as to material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the moving party has met this burden, the non-moving party must set forth evidence of specific facts showing the existence of a genuine issue for trial. Id.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. Id. 106 S.Ct. at 2511.

In deciding the motion, this Court must view the material facts, and the inferences properly drawn therefrom, in the light most favorable to the non-moving party. Anderson at 255–56, 106 S.Ct. at 2513. Only the facts that may affect the outcome of the case under the governing law and are necessary elements of the claim are "material." Id. Moreover, a factual dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id.

### B.  Circuit Court Decree as Covering Support Rights

▮ Plaintiff Glenda Jackson asserts that the October 4, 1983 circuit court order is a court order which: (1) expressly addressed the issue of child support; (2) did not require Ms. Jackson to pay child support; and (3) specifically ordered the father to pay support when the children were visiting their mother. The Missouri statute specifies that where there exists a court order which covers that parent's support obligation to a dependant, the state debt of the parent shall be equal to the obligation ordered by the court. Ms. Jackson contends that the circuit court's custody decree was "an order of a court of competent

jurisdiction" which covered her support obligation to her former husband. Ms. Jackson states that it was this support obligation, which was $0.00, which her former husband subsequently assigned to the State of Missouri when he applied for AFDC. Ms. Jackson concludes that as the result of the circuit court order, she had no support obligation to the father, the father had no support obligation to assign to the State as a condition of receipt of AFDC payments and, therefore, she owed nothing to the State.

This Court has examined the fact situation in the case at bar. The circuit court's October 4, 1983 custody decree was entered on Ms. Jackson's motion to modify the custody order. Ms. Jackson's motion requested that the custody order be modified by awarding to her the custody of the children and child support payments. The court was asked to address the issue of the support obligation of Ms. Jackson's former husband to Ms. Jackson, but was not asked to address Ms. Jackson's support obligations to her former husband. It cannot be reasonably inferred that a court in such a situation would also, as a matter of course, consider support obligations for which no motion was made.

This Court's determination of the issue of the status of the October 4, 1983 order also involves statutory construction. Section 454.465.1(1) of the Missouri statutes specifies that where there is a court order covering that parent's support obligation, that the order controls the amount of the "state debt." A court order is defined in section 454.460(2) as "any judgment, decree, or order of any court which orders payment of a set or determinable amount of money." In the case at bar, the October 4, 1983 custody decree does not order Ms. Jackson to pay a set amount of money. The order does not address her support obligations in any manner. Therefore, the custody decree does not cover Ms. Jackson's support obligation.

Courts in other jurisdictions have ruled on similar issues of law involving the State Child Support Enforcement Division's attempt to collect money from non-custodial parents whose children received public assistance. One case decided by the Supreme Court of Alaska involved five consolidated cases where the prior court orders did not include provisions requiring the non-custodial parents to pay child support. *State v. Gammons*, 774 P.2d 181 (Alaska 1989). The court concluded that those orders were not "support orders" within the meaning of the AFDC statutes, and that the non-custodial parent must repay the AFDC to the state in an amount determined by the state. *Id.* at 183–84. *See also State Dept. of Revenue v. Hubbard*, 720 P.2d 1177, 222 Mont. 156 (1986). The court in *State v. Gammons* based its conclusion on statutory construction.

This Court has reviewed the Ms. Jackson's fact situation in the case at bar, the Missouri state statutes, and other relevant case law. This Court has determined that as a matter of law, the October 4, 1983 custody decree is not a court order covering Ms. Jackson's support obligations to her former husband.

C. Violation of Supremacy Clause

Ms. Jackson claims, in the alternative, that the Director's failure to set her "state debt" in accordance with the formula mandated by the Federal Regulations was in violation of the Supremacy Clause of the United States Constitution. It is well-established that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws which "interfere with, or are contrary to," federal laws. *Gibbons v. Ogden*, 9 Wheat. 1, 211, 6 L.Ed. 23 (1824).

Plaintiff Glenda Jackson asserts that defendant Director Rapps and the DCSE have violated the Supremacy Clause by failing to establish proper standards for assessing the "state debt" as required by 45 C.F.R. § 302.50 and § 302.53. Sections 302.50 and 302.53 of the Federal Regulations establish a method for determining the amount of support obligation. That method provides that in the event that there is no court order establishing the amount, the enforcement agency must determine the amount of support obligation in accordance with a formula:

[The] amount [is] determined in writing by the [enforcement] agency as part of the legal process referred to in paragraph (a)(2) of this section in accordance with a formula which meets the criteria prescribed in § 302.53.

45 C.F.R. § 302.50(b)(2) (1989). The formula, as established in § 302.53, must take into consideration the following factors:

(1) All earnings income and resources of the absent parent including real and personal property;

(2) The earnings potential of the absent parent:

(3) The reasonable necessities of the absent parent;

(4) The ability of the absent parent to borrow;

(5) The needs of the child for whom the support is sought;

(6) The amount of assistance which would be paid to the child under the full standard of need of the State's IV–A plan;

(7) The existence of other dependants; and

(8) Other reasonable criteria which the State may choose to incorporate.

45 C.F.R. § 302.53 (1989).

The Missouri statute, rather than utilizing the formula in the Federal Regulations, authorizes the Director of the DCSE to "set or reset" the amount of state debt "in an amount not to exceed the amount of public assistance paid." Mo.Rev.Stat. § 454.465 (1986). Ms. Jackson's supporting documentation indicates that it has been the policy of the DCSE to set the amount of "state debt" at the total amount of public assistance paid. *See, e.g.,* Hearing Transcript at 33–40, *Shipman v. Missouri Division of Family Services,* Case No. S83–199C (U.S. District Court E.D.Mo., E. Div., March 28–29, 1988). In the case at bar, Director Rapps set the amount of "state debt" at the total amount of public assistance paid to Ms. Jackson's former husband.

This state policy on calculation of the "state debt" is, on its face, in direct contravention to the requirements of the Federal Regulations. The United States Supreme Court has stated that Federal Regulations have the same preemptive force as acts of Congress. *Hillsborough County v. Automated Medical Labs, Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). Therefore, sections 302.50 and 302.53 of the Federal Regulations requiring that the support obligation be set in accordance with a formula can have preemptive force.

■ The case at bar involves a matter of domestic relations law, which is generally left to the states to regulate. The Supreme Court has consistently recognized that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not the laws of the United States." *In re Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 852–53, 34 L.Ed. 500 (1890). There is a higher standard for the establishment of federal preemption in the area of domestic relations. This Court's review of Supremacy Clause challenges to domestic relations laws is limited to a determination of whether Congress has "positively required by direct enactment that state law be preempted." *Rose v. Rose,* 481 U.S. 619, 625, 107 S.Ct. 2029, 2033, 95 L.Ed.2d 599 (1987) (citing *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979)). The state law "must do 'major damage' to 'clear and substantial' federal interests" in order for the preemption doctrine to apply. *Id.* (citations omitted).

Defendant argues that plaintiff has not met that higher burden in the case at bar. Defendant supports his argument by citing the Supreme Court's holding in *Rose v. Rose,* contending that the *Rose* Court determined that federal child support enforcement did not preempt state laws in the area of domestic relations. This is not a true statement of the *Rose v. Rose* holding. The *Rose* Court held only that the state statute in question did not conflict with the federal law, and that therefore preemption did not occur. *Id.* 481 U.S. at 634–35, 107 S.Ct. at 2038–39. Therefore, *Rose v. Rose* is not determinative of the ability of the plaintiff in the case at bar to meet that

higher standard for preemption of a domestic relations law.

The Supreme Court has not ruled on the preemptive force of the federal child support enforcement provisions. The Court has ruled, however, on the preemptive force of similar federal statutes, such as the federal AFDC provisions, over state domestic relations laws. In *Townsend v. Swank*, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971), a state law defining dependant children eligible for AFDC benefits was challenged on the basis that it conflicted with the definition in the Federal Regulations. The Supreme Court concluded that state requirements not in compliance with federal AFDC standards violated the Supremacy Clause, and were thus invalid. *Id.* at 285–86, 92 S.Ct. at 505.

Another case wherein the Court ruled on the preemptive force of federal laws over state domestic relations laws is *Planned Parenthood Association of Utah v. Dandoy*, 635 F.Supp. 184 (D. Utah 1986). In *Planned Parenthood*, the Court ruled on the preemptive force of the federal Medicaid grant program over a state law prohibiting the use of public funds to provide contraceptive services to unmarried minors without parental consent. The Court held that the federal law preempted the state domestic relations law, even though the state's participation in the program was voluntary. *Id.* at 188–89. The *Planned Parenthood* court reasoned that once the state entered the federal program, conflicting state legislation was preempted. The court concluded:

> Notwithstanding the limited application of federal law in the field of domestic relations generally, this Court, even in that area, has not hesitated to protect, under the Supremacy Clause, rights and expectancies established by federal law against the operation of state law, or to prevent the frustration and erosion of the congressional policy embodied in the federal rights.

*Id.* at 188 (citing *Ridgway v. Ridgway*, 454 U.S. 46, 54, 102 S.Ct. 49, 54, 70 L.Ed.2d 39 (1981)).

■ Defendants seem to argue that because the case at bar involves state domestic relations law that a federal regulation cannot override the state statute absent total preemption of the field of child support enforcement. However, the United States Supreme Court has stated that preemption of a state law by a federal law occurs in situations other than total preemption of a field. Preemption under the Supremacy Clause occurs under the following circumstances:

> [F]irst, when Congress in enacting a federal statute, has expressed a clear intent to preempt state law; second, when it is clear, despite the absence of explicit preemptive language, that Congress has intended, by legislating comprehensively, to occupy an entire field of regulation and has thereby 'left no room for the States to supplement' federal law; and finally when compliance with both state and federal law is impossible, or when the state law 'stands as an obstacle to the accomplishment and execution of the full purpose and objective of Congress.'

*Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 699, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984) (citations omitted). Thus, federal regulations which "do not exclude all state legislation in [the] same field nevertheless override state laws with which they conflict." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525–26, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977).

■ It is this Court's determination that the Federal Regulations in the case at bar have preemptive force under the third set of circumstances in *Capital Cities:* when a state law stands as an obstacle to accomplishment of the objectives of Congress. In order to apply the third *Capital Cities* test to the case at bar, this Court must first determine the objectives of Congress when it mandated the establishment of a joint state/federal child support enforcement program, 42 U.S.C. § 651–665. The federal statutes require as a condition for federal funding that the state child support enforcement program comply with the requirements set forth in the Federal Regulations. 42 U.S.C. § 601, 652, & 654 (1989). Clearly, it was the objective of Congress to

establish a uniform and effective method of child support enforcement in compliance with minimum standards to be set by the U.S. Department of Health and Human Services and codified in the Code of Federal Regulations.

This Court will next examine, under the *Capital Cities* test, that portion of the state's enforcement program at issue to determine if it frustrates Congressional objectives. The state's adopted method of setting the amount of the non-custodial parent's obligation allows the Director, in the absence of a court order setting the amount, to set the amount at his discretion, not to exceed the public assistance paid to the non-custodial parent. It has been the Director's policy to set the amount of "state debt" in an amount equivalent to the total amount of public assistance paid out by the state. The state does not consider the financial situation of the non-custodial parent, nor does it in any way consider the facts of each individual child support enforcement case, as is required in the federally mandated formula. It is clear that Missouri's refusal to use the federal formula stands as an obstacle to the accomplishment of the full purpose and objectives of the Congressional mandate that federally funded state enforcement programs comply with federal standards. This Court, therefore, concludes, under the *Capital Cities* test, that the Federal Regulations requiring the amount of support obligation to be set in accordance with a formula have preemptive force over the Missouri statute and the Director's enforcement policy.

The State's method of calculation does not comply with the Federal Regulations. It is the Director's policy, rather than the state statute itself, which is in direct conflict with the Federal Regulations. The fact that it is the state policy rather than the actual state statute which is in direct conflict does not affect the preemptive impact of the Federal Regulations. Established policies concerning the application of the state statutes which conflict with federal mandates can also be preempted by Federal Regulations. The United States Supreme Court has stated:

The criterion for determining whether state laws are so inconsistent that state law must give way is firmly established in our decisions. Our task is 'to determine whether, under the circumstances of this particular case, [the state's] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' This requirement requires us to consider the relationship between the state and federal laws as they are interpreted and applied, not merely as they are written. *Jones v. Rath Packing Co.*, 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977) (citations omitted).

The critical issue in a preemption analysis is whether Congress intended that federal regulation supersede state law. *Louisiana Public Service Commission v. F.C.C.*, 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1987). This Court will examine the federal child support enforcement provisions in order to determine if Congress intended preemption. The Federal Regulations provide a comprehensive scheme for the recovery from the non-custodial parent of funds expended by the State and the federal governments. Federal statutes require as a condition for federal funding that the State child support enforcement program comply with the requirements in the Federal Regulations promulgated by the U.S. Department of Health and Human Services. 42 U.S.C. §§ 601, 652 & 654 (1989). The Federal Regulations specifically mandate that in those instances where there is no court order, the state shall set the amount recoverable "in accordance with a formula which meets the criteria prescribed in § 302.53." 45 C.F.R. § 302.50(b)(2) (1989). That formula requires consideration of factors such as the non-custodial parent's financial situation and the needs of the child for whom public assistance has been supplied.

The unambiguously-stated federal provisions clearly set out the intent of Congress when it enacted the child support enforcement provisions, as has been previously discussed in this order. The regulatory scheme enacted by Congress specifies that federal agencies oversee the state child

support enforcement programs. 42 U.S.C. § 652 (1983 & Supp.1990). State enforcement programs must comply with the specific requirements of the Federal Regulations, as a condition for receipt of federal funds. It is clear that it was not the intent of Congress that the state should establish its own methods and procedures, while still receiving federal funding, as Missouri has done. It is clear that Congress intended to preempt the field of child support enforcement in those states like Missouri which have elected to participate and receive federal funds.

The United States Supreme Court, when ruling on a Supremacy Clause challenge to a state AFDC law which conflicted with the Federal Regulations, did not even question the preemptive force of the federal AFDC laws. *Townsend v. Swank,* 404 U.S. 282, 285–86, 92 S.Ct. 502, 505, 30 L.Ed.2d 448 (1971). Nor shall this Court further question the preemptive force of the federal child support enforcement laws. It is clear to this Court that Congressional enactment of the federal child support enforcement provisions has positively required that state law be pre-empted in accordance with the *Rose v. Rose* standard for preemption of state domestic relations law. 481 U.S. 619, 625, 107 S.Ct. 2029, 2033, 95 L.Ed.2d 599 (1987) (citations omitted). Further, in accordance with the *Rose v. Rose* standard, this Court finds that the Director's policy of setting the "state debt" in an amount equal to the public assistance paid out does "major damage to clear and substantial federal interests." *Id.* (citations omitted). The Director's policy is preempted by the Federal Regulations requiring the use of a formula. As such, the State's policy and practice is invalid and unconstitutional.

### D. Eleventh Amendment Immunity

■ Defendant correctly states, and plaintiff agrees, that the Eleventh Amendment bars recovery of money damages from the state, or from a state official acting in his official capacity. *Edelman v. Jordan,* 415 U.S. 651, 662–68, 94 S.Ct. 1347, 1355–58, 39 L.Ed.2d 662 (1974). Defendant can, however, be sued in his official capacity for injunctive relief. *Ex parte*

*Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

### E. Absolute Immunity

■ Defendant Rapps contends that he is entitled to absolute immunity from damages in a civil action for deprivation of plaintiff's constitutional rights. Defendant asserts that his actions as a State official are analogous to those of a prosecutor in a criminal proceeding and, therefore, judgment against him in his individual capacity is barred by absolute immunity.

Defendant Rapps cites *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) in support of his proposition. The court in *Butz v. Economou* extended the absolute prosecutorial immunity to those involved in an administrative proceeding before the United States Department of Agriculture. The Department had initiated an administrative hearing to revoke or suspend the registration of a commodity futures merchant. The *Butz v. Economou* court deemed absolute immunity necessary to permit officials to exercise their discretion free of intimidation or harassment by litigants. The court stated:

> We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune to damages.

*Id.* at 512–13, 98 S.Ct. at 2914.

However, the reasoning of *Butz v. Economou* does not apply to the case at bar. The action in the case at bar concerns the decisions of Director Rapps not to use the federally mandated formula in setting the amount of "state debt" owed by the noncustodial parent. This decision was not adjudicatory in nature, but was purely administrative. Therefore, Defendant Rapps is not entitled to absolute immunity in the case at bar.

### F. Qualified Immunity

■ Defendant contends, in the alternative, that he is entitled to qualified immunity for damages and for the entire suit,

under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The *Harlow* court held that the doctrine of qualified immunity bars suit not only as to liability, but as to being subjected to a trial proceeding. The qualified immunity bar applies when the alleged conduct does not violate, under an objective standard of review, a clearly established statutory or constitutional right. The inquiry concerns whether a right is clearly established as a matter of law. Whether that right is clearly established, in reference to an official's discretionary functions, must be determined by the Court by reference to decisional law as it existed at the time the defendants are alleged to have violated plaintiff's rights. *Id.*

■ The issue for this Court is whether Ms. Jackson's right to have her child support arrearages calculated in accordance with the federally mandated formula was a clearly established statutory right. Defendant cites *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) for the proposition that the law concerning child support enforcement was not "established" for the purpose of qualified immunity, because the Supreme Court had not ruled on the preemptive force of the federal child support enforcement laws.

However, the fact situation in *Mitchell v. Forsyth* is clearly distinguishable from the that of the case at bar. The *Mitchell* case involved the qualified immunity of United States Attorney General John Mitchell, who had authorized a warrantless wiretap. The Court held that Mitchell was entitled to qualified immunity because it was not clearly established at the time that such wiretaps were unconstitutional. *Id.* at 2818. The Court's decision was based on the fact that such warrantless wiretaps for the protection of national security historically had been authorized since World War II, by Presidents Roosevelt, Truman, Eisenhower, Kennedy, Johnson, and Nixon. *Id.* The Court's decision was also based on the fact that the Supreme Court had not specifically ruled that warrantless wiretaps were unconstitutional. *Id.* The *Mitchell* Court concluded on these facts, that it was "any-

thing but clear that these practices violated the Constitution...." *Id.*

Unlike the facts situation in *Mitchell*, in the case at bar the federal statutes and regulations clearly require calculation of the "state debt" based on a formula. The only history of ignoring that formula and automatically setting the "state debt" at an amount equivalent to the amount of public assistance paid out was the original version of the state statute. The statute was amended to delete that very provision. The amendment occurred after initiation of a suit challenging that provision for noncompliance with the federal statute mandating the use of a formula. Therefore, *Mitchell v. Forsyth* does not control Ms. Jackson's case. The fact that the Supreme Court has not ruled on the preemptive force of the federal child support enforcement regulations is not determinative in the case at bar.

This Court must consider another factor when determining whether Ms. Jackson's right to have her child support arrearages calculated in accordance with the federally mandated formula was a clearly established statutory right for the purpose of qualified immunity. One factor is the language of the federal law itself. The requirements of 45 C.F.R. § 302.53 are not unclear or ambiguous on their face. The Federal Regulations clearly require the use of a formula when calculating the amount of support obligation, including arrearages.

Defendant admits that the Director of DCSE is responsible for administering the program of joint state/federal child support enforcement in Missouri. Defendant further admits that as Director he was responsible for the overall administration of DCSE, which included the agency's compliance, with state and federal laws which pertain to such enforcement. The state plan requirements for the program are stated in 45 C.F.R. §§ 302.0–302.85. As a reasonably competent Director, the defendant should have known the federal law governing the joint state/federal child support enforcement program.

Defendant Rapps has not asserted that he was unaware of the federal require-

ments stating that a formula must be used in determining the child support arrearages owed by the non-custodial parent. Indeed, plaintiff's counsel states that he has filed three Supremacy Clause challenges to the procedure for calculation of the "state debt" against Director Rapps and his predecessor Director Michael Henry. The first of these actions was filed in 1983, *Shipman v. Missouri Department of Family Services*, 588 F.Supp. 1203 (E.D. Mo.1984), *vacated and remanded*, 782 F.2d 1048 (8th Cir.1985).

The 1983 suit was based on the original Missouri statute which required that the Director set the amount of "state debt" in an amount equivalent to the public assistance paid out. After initiation of the *Shipman* case, the Missouri legislature amended the statute in 1984. The amended statute allowed the "state debt" to be set at the discretion of the Director. After the amendment in 1984, the district court dismissed *Shipman* for mootness and lack of standing. The Eighth Circuit affirmed the dismissal. *Shipman v. Missouri Department of Family Services*, 877 F.2d 678 (8th Cir.1989).

A reasonably competent director of a state department should be aware of federal laws governing the actions of his department. Further, the prior litigation challenging the same DCSE procedure being challenged in the case at bar imputes knowledge to Director Rapps that the DCSE policy was not in compliance with the Federal Regulations. Therefore, this Court holds that there is no apparent basis for defendant's assertion that he is entitled to qualified immunity.

This Court notes parenthetically that the state law prior to 1984 mandated that the Director set the amount of "state debt" at an amount equal to the public assistance paid out by the State. Any actions which might have been taken by Director Rapps pursuant to the pre–1984 statute were taken pursuant to statutory mandate. Therefore, the Director is entitled to qualified immunity for any actions which might have been taken pursuant to the pre–1984 statute.

**G. Doctrine of Respondeat Superior**

Defendant states that he had no direct or personal knowledge of the assessment and enforcement of the "state debt" against plaintiff Jackson, but that DCSE employees assessed and enforced the "state debt" against Ms. Jackson. Defendant argues that, therefore, he is not liable because the doctrine of *respondeat superior* does not apply to lawsuits under 42 U.S.C. § 1983. *Glick v. Sargent*, 696 F.2d 413, 414 (8th Cir.1983).

The doctrine of *respondeat superior*, however, is not at issue in the case at bar. The action for which plaintiff Jackson seeks to hold Defendant Rapps liable is his refusal to adopt the federally mandated formula for calculation of child support arrearages owed as "state debt." Defendant admits that as Director of the DCSE that he was responsible for adopting policies and regulations necessary or desirable to carry out the provisions of the child support enforcement program. Mo.Rev.Stat. § 454.400(2)(6) (Supp.1990). Liability in the case at bar is not based on the acts of the employees of Defendants Rapps, but is based on the decision made by the Director not to use a formula for the calculation of the "state debt." The doctrine of *respondeat superior* is not at issue in the case at bar.

**H. Due Process**

Plaintiff's complaint also makes a due process claim for violation of the Fourteenth Amendment of the United States Constitution. This Court has determined that the Director's policy of setting the "state debt" in an amount equal to the public assistance paid out violates the Supremacy Clause. Therefore, because this case has been determined on other grounds, this Court will not rule on the validity of the due process claim at this time.

**III. CONCLUSION**

This action challenges the State's method for calculating child support arrearages owed to the State by the non-custodial par-

ent as reimbursement for public assistance paid out to the custodial parent. The federal mandate that child support arrearages be calculated in accordance with a formula clearly preempts Director Rapps' policy to set the amount of arrearages in an amount equal to the amount of public assistance paid out. As such, the policy is in violation of the Supremacy Clause of the United States Constitution. This Court must grant summary judgment in favor of plaintiff Glenda Jackson on the issue of liability for violation of the Supremacy Clause.

This Court also finds that defendant is not entitled to either absolute or qualified immunity. This Court notes that rejection of a claim for qualified immunity is immediately appealable. *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

It may also be found by the Appeals Court that this Court's rulings on the parties' motions for summary judgment are sufficiently related to the immunity question as to be immediately appealable. *See Moreno v. Small Business Administration*, 877 F.2d 715, 716 (8th Cir.1989). Given the dearth of case law in this area, however, this Court additionally finds that there is substantial grounds for differing opinions on the issues before this Court and that an immediate appeal from this order will significantly advance the ultimate termination of litigation on these matters. This Court will, therefore, certify its orders concerning summary judgment for immediate appeal pursuant to 28 U.S.C. § 1292(b).

Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment is denied. It is further

ORDERED that plaintiff's motion for summary judgment on the issue of liability is granted. It is further

ORDERED that all administrative judgments setting the "state debt" entered by the Department of Child Support Enforcement, its Director, or predecessor agencies, prior to compliance with 45 C.F.R. § 302.53, are null and void. It is further

ORDERED that the current Director of the Missouri Department of Child Support Enforcement, shall promulgate a method to be used for the calculation of the "state debt" which shall be in compliance with the Federal Regulations, 45 C.F.R. § 302.53, as stated in this order. It is further

ORDERED that the Director of the Missouri Department of Child Support Enforcement is enjoined in the future from arbitrarily setting the amount of "state debt" in an amount equal to the amount of public assistance paid out, without taking into account the factors in the federally mandated formula, as stated in this order. It is further

ORDERED that plaintiff's counsel shall be awarded attorney's fees and costs under 42 U.S.C. § 1988, in an amount to be determined after a disposition on monetary damages. It is further

ORDERED that the issues decided in this order which are not otherwise entitled to immediate appeal are certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). It is further

ORDERED that by agreement and stipulation of the parties, the Director of the Missouri Department of Child Support Enforcement will refrain from filing any new actions for collection of administratively determined "state debt" until resolution of this matter on appeal. It is further

ORDERED that by agreement and stipulation of the parties, the Director of the Missouri Department of Child Support Enforcement will locate and stay all current actions for collection of administratively determined "state debt" on or before December 31, 1990, and such stays will remain in effect until resolution of this matter on appeal. It is further

ORDERED pursuant to 28 U.S.C. § 1292(b) that further action on this case is stayed pending disposition of defendants' stated plan to appeal this action.