Glenda JACKSON, individually and
on behalf of others similarly
situated, Appellee,

v.

William R. RAPPS, individually and as
Director of the Missouri Division of
Child Support Enforcement, Appellant.

Terry SKELTON, Appellee,

v.

William R. RAPPS, Individually and as
Director of the Missouri Division of
Child Support Enforcement, Appellant.

Nos. 90–2604, 90–2605.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1991.

Decided Oct. 17, 1991.

Rehearing and Rehearing En Banc
Denied Jan. 9, 1992.

B.J. Jones, Jefferson City, Mo., argued, for appellant.

Jim R. Bruce, Kennett, Mo., argued, for appellee.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and HANSON,[*] District Judge.

JOHN R. GIBSON, Circuit Judge.

The issue in this case is the validity of the policy and practice of the Missouri Division of Child Support Enforcement to seek reimbursement from noncustodial parents of the entire amount of payments made under the Aid to Families of Dependent Children program in the absence of a court-ordered support obligation, rather than using the formula in the federal regulations to calculate the amount owed. Glenda Jackson and Terry Skelton filed separate actions under 42 U.S.C. § 1983 (1988) against the former and present directors of the Missouri Division of Child Support Enforcement challenging the directors' policy of attempting to collect the full benefits paid under the AFDC program and alleging that the policy violated federal regulations. The district court[1] granted partial summary judgment to the plaintiffs, holding that the federal regulations preempted the directors' policy and practice of attempting to collect the total amount of AFDC benefits paid. The court also denied the directors' cross-motions for summary judgment on the plaintiffs' claims for damages, ruling that the directors were not entitled to absolute or qualified immunity. We affirm on the ground that the supremacy clause prevents the implementation of a reimbursement policy other than one in compliance with existing federal regulations.

The State of Missouri participates in the joint state-federal AFDC program authorized by Title IV–A of the Social Security Act, 42 U.S.C. §§ 601–615 (1988). As a condition of federal funding, the state must comply with the requirements of federal statutes and regulations governing the AFDC program. The State is required to submit a state plan providing written assurances to the Secretary of the Department of Health and Human Services that its plan complies with the requirements of the federal statutes and regulations governing the AFDC program. 42 U.S.C. §§ 601–602. The State is required to adopt a child support enforcement program in "substantial compliance" with Title IV–D of the Social Security Act, 42 U.S.C. §§ 651–665. 42 U.S.C. § 602(a)(27). The Missouri Division of Child Support Enforcement is responsible for the enforcement of child support obligations. *See* Mo.Rev. Stat. § 454.400 (1986). The Director of the Division is responsible for adopting policies and regulations for implementing the state's plan and for ensuring compliance with the federal program.

To become eligible for AFDC benefits, an applicant must assign "support rights" to the state. 42 U.S.C. § 602(a)(26)(A); Mo. Rev.Stat. § 208.040.2(2) (Supp.1990). Support rights assigned under section 602(a)(26) constitute an obligation owed to the State. 42 U.S.C. § 656 (1988). The amount of the obligation is set by a court order for support, unless there is no court order covering support rights. 42 U.S.C. § 656(a)(2). In that instance, the obligation shall be "determined by the State in accordance with a formula approved by the Secre-

---

[*] The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable Scott O. Wright, United States

tary." 42 U.S.C. § 656(a)(2)(B).[2] The formula adopted by the Secretary for setting the amount of the support obligation in the absence of a court order setting the amount is contained in 45 C.F.R. § 302.-53(a) (1990), which provides that the formula must take into consideration:

> (1) All earnings, income and resources of the absent parent including real and personal property;
>
> (2) The earnings potential of the absent parent;
>
> (3) The reasonable necessities of the absent parent;
>
> (4) The ability of the absent parent to borrow;
>
> (5) The needs of the child for whom the support is sought;
>
> (6) The amount of assistance which would be paid to the child under the full standard of need of the State's IV–A plan;
>
> (7) The existence of other dependents; and
>
> (8) Other reasonable criteria which the State may choose to incorporate.

Missouri's state plan for child support enforcement originally stated that when no court order addressed the duty to provide support, the State would administratively establish support arrearages. The amount of support arrearages was called the "state debt." Mo.Rev.Stat. § 454.465 (1982 Supp.) The original Missouri statute did not require the use of a formula in establishing the amount of the state debt, but defined "state debt" as the "amount equal to the amount of public assistance" paid

out. *Id.* In 1984, the Missouri General Assembly amended the 1982 enactments, and at that time, authorized the Director to set the state debt in "an amount not to exceed the amount of public assistance" paid. Mo.Rev.Stat. § 454.465.1(2) (1986). The policy of the Division is to designate the full amount of public assistance paid out over the last five years as state debt unless a lower amount is negotiated with the noncustodial parent.

Both Terry Skelton and Glenda Jackson are divorced or separated parents who do not have custody of their children, and whose children received AFDC benefits. Neither Skelton nor Jackson had been ordered to pay child support. Each received a notice and finding of financial responsibility from the Missouri Division of Child Support Enforcement. The notices each set the amount of the state debt owing at the total amount of public assistance paid out to their minor children. Jackson received notice that she was responsible for repaying the state $11,064.00 as state debt. Skelton's state debt was administratively set at $4,072.00. Neither responded to the notice and both received an administrative default order setting liability for the state debt in amounts equal to the public assistance paid out to their minor children.

Skelton and Jackson brought separate actions against Rapps and Henry, former and present directors of the Division of Child Support Enforcement of the Department of Social Services. Skelton and Jackson each sought relief from the administrative orders establishing the amount of state

District Judge for the Western District of Missouri.

**2.** 45 C.F.R. § 302.50 (1990) describes the method for establishing and recovering support obligations:

> The State plan shall provide as follows:
> (a) The support rights assigned to the IV–D agency pursuant to § 232.11 of this title or section 471(a)(17) of the Act constitute an obligation owed to the State by the individual responsible for providing such support. Such obligation shall be established by:
>> (1) Order of a court of competent jurisdiction,
>> (2) Other legal process as established by State laws, such as an administrative hearing

> process or a legally enforceable and binding agreement....
>
> \* \* \* \* \* \*
> (b) The amount of the obligation described in paragraph (a) of this section shall be:
>> (1) The amount specified in the order of a court of competent jurisdiction which covers the assigned support rights; or
>> (2) If there is no court order, an amount determined in writing by the IV–D agency [in Missouri, the Division of Child Support Enforcement] as part of the legal process referred to in paragraph (a)(2) of this section in accordance with a formula which meets the criteria prescribed in § 302.53.

debt as the total amount of public assistance paid on behalf of their children. Skelton and Jackson sought declaratory and injunctive relief as well as monetary damages against the directors, claiming that Mo.Rev.Stat. § 454.465.1(2) and the directors' policy and practice of setting the state debt at the total amount of AFDC benefits paid violated the provisions of 45 C.F.R. §§ 302.50 and 302.53 and the due process and supremacy clauses. Jackson later brought a class action, and the court certified a class consisting of non-custodial parents whose children receive or have received AFDC benefits through the State of Missouri pursuant to the post–1984 amended statute, Mo.Rev.Stat. § 454.465, whose support obligations have not been established by a court order, and whose "state debt" was set by the Director without consideration of the formula mandated by 45 C.F.R. §§ 302.50 and 302.53. *Jackson v. Rapps,* 746 F.Supp. 934 (W.D.Mo. Aug. 13, 1990).

The district court granted Skelton's and Rapps's summary judgment motions, holding that the supremacy clause preempted Mo.Rev.Stat. § 454.465.2 and the Division's policy and practice.[3] *Jackson v. Rapps,* 746 F.Supp. 934, 943 (W.D.Mo.1990); *Skelton v. Rapps,* No. 88–4232–CV–C–5 slip op. at 17 (W.D.Mo. Aug. 22, 1990). The court entered a judgment that: (1) declared all administrative judgments of the Division which did not comply with 45 C.F.R. § 302.53 null and void; (2) required the Division to promulgate a method for calculating state debt in compliance with 45 C.F.R. § 302.53; and (3) prohibited the Director from automatically setting state debt at the amount of public assistance paid out by the state. *Skelton,* slip op. at 28. The court also denied the directors' motions for partial summary judgment on plaintiffs' claims for damages, holding that the directors are not entitled to absolute or qualified immunity. *Jackson,* 746 F.Supp. at 945; *Skelton,* slip op. at 24–25. This appeal followed.[4]

### I.

■ The directors first argue that the district court erred in holding that the provisions of section 454.465.1(2) and the division's policy and practice are preempted under the supremacy clause. The directors argue that preemption is not appropriate under the analysis of *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 699, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984), because there is: (1) no congressional intent to preempt state law; (2) no actual conflict between the state law and federal regulations; and (3) the policies and practices of the division and section 454.465 do not cause any major damage to any clear and substantial federal interest.

Jackson and Skelton respond that although the state statute is preempted by federal law under the *Capital Cities* analysis, such an analysis is not even necessary, when, as here, the state statute and policy do not conform with federal program regulations.

In *Townsend v. Swank,* 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971), the Supreme Court held that Illinois' definition of a "dependent child" was inconsistent with the federal definition required by the AFDC program. *Id.* at 284–85, 92 S.Ct. at 504–05. The Court, without engaging in a preemption analysis, simply concluded that the Illinois statute and regulations conflicted with the federal statute and therefore were invalid under the supremacy clause. *Id.* at 285–86, 92 S.Ct. at 504–05.

Similarly, in *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), the Court invalidated a state regulation which defined "parent" in a manner inconsistent with the definition set forth in the Social Security Act. *Id.* at 333, 88 S.Ct. at 2141. Again, the Court did not employ a preemption analysis, but instead simply reasoned:

There is of course no question that the Federal Government, unless barred by

---

3. In light of this ruling, the district court did not consider whether a due process violation also occurred. *Jackson,* 746 F.Supp. at 945; *Skelton,* slip op. at 26.

4. The district court certified the decision for immediate appeal pursuant to 28 U.S.C. § 1292(b) (1988).

some controlling constitutional prohibition, may impose the terms and conditions upon which its money allotments to the States shall be disbursed, and that any state law or regulation inconsistent with such federal terms and conditions is to that extent invalid.

*Id.* at 333 n. 34, 88 S.Ct. at 2141 n. 34. (citations omitted)

In *Gorrie v. Bowen,* 809 F.2d 508 (8th Cir.1987), we considered whether a regulation of the Secretary of Health and Human Services requiring that applications for public assistance for AFDC benefits include siblings living in the same household conflicted with the state's authority over child support obligations. Although this court stated that the issue did "not present the 'classic' preemption question of whether a congressional enactment precludes state regulation of the same subject," *id.* at 520, we went on to utilize a preemption analysis to determine whether a conflict between federal and state law existed, stating:

> "The question here relates to the conditions that Congress has placed on state programs supported by federal funds." The State voluntarily accepts the conditions imposed by Congress and, once it chooses to do so, the supremacy clause obliges it to comply with federal AFDC requirements.

*Id.* (citations and footnote omitted).

Similarly, the District of Columbia Circuit stated in *Planned Parenthood Federation v. Heckler,* 712 F.2d 650 (D.C.Cir. 1983):

> It is elementary that under the Supremacy Clause of the Constitution states are not permitted to establish eligibility standards for federal assistance programs that conflict with the existing federal statutory or regulatory scheme.

*Id.* at 663–64. The court rejected the argument made in that case that a regulation issued by the Secretary of Health and Human Services, requiring Title X grantees to comply with prevailing state law as to parental notification or consent, merely clarified the fact that the state law was not preempted by federal law. *Id.* at 664 n. 57. The court explained:

> This case presents no direct conflict between two bodies of law, one state and one federal. We have only a *voluntary* federal funding program with specific eligibility requirements. The law on this issue is clear: even if Congress permits the States to impose additional rules as to eligibility for federal funding, those rules must be consistent with the federal standards or else be held invalid under the Supremacy Clause.

*Id.* (citing *Townsend,* 404 U.S. at 286, 92 S.Ct. at 505) (emphasis in original).

The directors and amici [5] argue that there is no actual conflict between Mo.Rev. Stat. § 454.465.1(2) and the federal regulations, and thus, the cases cited above have no bearing on the issues here.[6] They contend that no conflict exists because the federal regulations and statute apply only to current support obligations (and resulting arrearages) based on a judicial or administrative support order and that Mo. Rev.Stat. § 454.465.1(2) applies to "state debt" based on the amount of unreimbursed public assistance paid in the absence of a support order. The basis for their argument is that section 454.465.1(2) is nothing more than the codification of the common law action for necessities, and that a fundamental difference exists between child support obligations and an action for necessities. They argue that when the Division proceeds under section 454.465.1(2),

---

**5.** The State of Arizona submitted an amicus curiae brief also arguing that the district court erred in holding Missouri's statute and practice preempted by federal regulations.

**6.** They further argue that the decisions are factually distinguishable because those decisions dealt with state limitations on the eligibility of individuals to receive benefits, and Missouri's policy of attempting to collect the entire amount

of AFDC benefits paid out does not restrict the availability of individuals to receive child support enforcement services. We reject this distinction. These decisions do not rest on the fact that the state regulation in issue concerns eligibility requirements. Rather, it is the conflict between the state and federal regulation which supports the courts' invalidation of the state regulation.

the State of Missouri acts as any other creditor and thus may seek to recover the total amount of benefits paid. We are unpersuaded by this distinction. Here, Missouri participates in a federal program and receives federal funds. As a condition of receiving such funds, Missouri must comply with program requirements and cannot refuse to comply with federal regulations governing the program by simply stating that the monies it seeks to recover are governed by state law.

The directors also argue that the Division has adopted a scale and formula for determining minimum support obligations and is therefore in compliance with the federal regulations. The directors point to Mo.Rev.Stat. § 454.480 (1986) and 13 C.S.R. 30–5.010 (1991), which set forth considerations similar to those in 45 C.F.R. § 350.53 for determining a parent's minimum support obligation. These enactments, however, concern the determination of a parent's minimum support obligation and do not concern the recoupment of public assistance benefits in the absence of an administrative hearing. *See* Mo.Rev.Stat. § 454.475. Moreover, the directors admit that their policy is to set the state debt at the total amount of AFDC benefits paid out.

We are convinced that the Director's policy in setting the amount of state debt as the total amount of public assistance paid out violates federal regulations governing the AFDC program. Here, statutes and regulations covering the AFDC program require that the states follow criteria set forth in 45 C.F.R. § 302.53(a). 42 U.S.C. § 654(13) (1988) provides: "... the State *will comply* with such other requirements and standards as the Secretary [of Health and Human Services] determines to be necessary to the establishment of an effective program for ... obtaining support orders, and collecting support payments."

The mandatory language of the regulations requires that the criteria set forth in 45 C.F.R. § 302.53(a) be considered. Section 302.50(b) explains that if there is no court order for support, the amount of the support obligation is determined "in accord-

ance with a formula which meets the criteria prescribed in § 302.53."

Section 302.53(c) further provides:

The formula described in paragraph (a) of this section *shall* be utilized to determine the required monthly support obligations, the amount of support obligation arrearage, if any, and the amount to be paid periodically against such arrearage.

(Emphasis added.) Mo.Rev.Stat. § 454.-465.1(2) and the Director's policy are inconsistent with federal regulations governing the AFDC program. Accordingly, section 454.465.1(2) violates the supremacy clause and is invalid.

We affirm on the ground that the supremacy clause prevents the implementation of a reimbursement policy other than one in accordance with existing federal regulations. Our decision makes it unnecessary to reach the due process issue.

## II.

The directors next argue that the district court erred in denying motions for partial summary judgment on plaintiffs' claim for damages.

## —A—

■ The directors argue that they are absolutely immune from damages under the reasoning set forth in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). In *Butz*, the Supreme Court held that executive officials are immune from damages liability for their judicial acts. *Id.* at 514, 98 S.Ct. at 2914. Here, the district court rejected the directors' defense of absolute immunity, stating:

The action in the case at bar concerns the decisions of [the directors] ... not to use the federally mandated formula in setting the amount of "state debt" owed by the non-custodial parent. This decision was not adjudicatory in nature, but was purely administrative.

*Jackson*, 746 F.Supp. at 943; *Skelton*, slip op. at 20.

The district court's reasoning is consistent with that of the Supreme Court in

*Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In *Harlow,* the Court held that public officials are protected by absolute immunity only in certain, well-defined circumstances. 457 U.S. at 807, 102 S.Ct. at 2732. In *Mitchell,* the Court declined to provide absolute immunity to the Attorney General of the United States in a suit arising out of the Attorney General's authorization for conducting wiretaps. The Court declined to extend absolute immunity to the Attorney General because: (1) the Attorney General's role in carrying out tasks essential to national security had no analogous historical or common law basis for absolute immunity; (2) the Attorney General's responsibility for national security matters was not the type of function that might be significantly affected by the threat of harassing or vexatious litigation; and (3) no alternatives to damage suits existed against the Attorney General as a means of addressing the wrongful conduct. 472 U.S. at 521–24, 105 S.Ct. at 2812–14.

The directors contend that an application of the factors set forth in *Mitchell* shows that they are entitled to absolute immunity. They argue that their role is adjudicatory, not purely administrative, and that one of the reasons for adopting legislation relating to child support enforcement in Missouri was to eliminate the burden on the courts and prosecuting attorneys. We reject the directors' reasoning. The directors' policy of setting the amount of the state debt is an administrative function, albeit the results of their decisions may ultimately end up in the court system. *Cf. Kwoun v. Southeast Missouri Prof. Stds. Review Org.,* 811 F.2d 401, 408–09 (8th Cir.1987), *cert. denied,* 486 U.S. 1022, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988).

The directors also argue that they are exposed to a high risk of harassing or vexatious litigation, and that they are especially at risk because of the emotional nature of domestic relations cases and the large number of cases concerning child support. As the Supreme Court stated in *Mitchell,* however, the potential for a substantial number of cases does not require the extension of absolute immunity. 472 U.S. at 522 n. 6, 105 S.Ct. at 2813 n. 6. We fail to see how the directors' decision to comply with mandated federal regulations could breed harassing or vexatious litigation.

Finally, the directors argue that alternatives to damage suits exist and that they are subject to other checks that prevent an abuse of their discretion. They say that such checks include a non-custodial parent's right to seek judicial review challenging the setting of the state debt and the issuance of an administrative order. They further argue that because Rapps and Henry are attorneys, sanctions from the trial court and state bar disciplinary committees are also available if they abused their discretion.

Judicial review in an administrative hearing is available only when a "factual issue requiring the submission of evidence" exists. Mo.Rev.Stat. §§ 454.470, 454.475.1. There is no recourse available to challenge the director's underlying policies. Trial court sanctions or disciplinary committee proceedings do not provide an avenue for redress to a noncustodial parent in this situation. We cannot conclude that the district court erred in ruling that the directors are not absolutely immune from damage suits.

—B—

The directors also argue that they are entitled to qualified immunity from plaintiffs' damage claims. Qualified immunity protects a government official from suit if, at the time of the challenged acts, it was not clearly established that those actions would violate clearly established law of which a reasonable person would have known. *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39; *Arcoren v. Peters,* 829 F.2d 671, 673 (8th Cir.1987) (en banc), *cert. denied,* 485 U.S. 987, 108 S.Ct. 1290, 99 L.Ed.2d 500 (1988).

The directors set forth several reasons for contending that their failure to establish a formula in determining the amount

of the state debt under section 454.465.1(2) does not constitute a clear violation of federal statute or regulations. They argue, once again, that they did adopt a formula and, therefore, no violation of any kind occurred. They also argue that because: (1) the formula set forth in 45 C.F.R. § 302.53 allows a state to incorporate "[o]ther reasonable criteria ...", (2) other states have established similar policies, and (3) 42 U.S.C. § 602(a)(27) requires only "substantial compliance," they did not violate clearly established law of which a reasonable person would have known.

We are unpersuaded by the directors' reasoning. The federal statute and regulations unambiguously require the directors to utilize the prescribed formula in setting the state debt, and the directors are not entitled to qualified immunity.

### III.

After briefing and oral argument in this case, we were informed that Congress had amended 45 C.F.R. § 302.50, removed section 302.53, and revised section 302.56, expanding a reference to guidelines for judicial or administrative action and setting and modifying child support award amounts. 56 Fed.Reg. 22335–22354 (1991). As this case is before us on appeal under 28 U.S.C. § 1292(b), we must remand to the district court which may further consider its injunctive order under the modified regulations.

We affirm the judgment of the district court and remand to the district court for further proceedings consistent with this opinion.