Kenneth M. DYCUS, et al., Appellants,

v.

Jennifer Ann CROSS, et al., Respondents.

No. 76125.

Supreme Court of Missouri;
En Banc.

Jan. 25, 1994.

Linda F. Dycus, Daniel L. Franco, Kansas City, for appellants.

Claire C. McCaskill, Pros. Atty., Mary Beth Lundak, Asst. Pros. Atty., Kansas City, for respondents.

ROBERTSON, Judge.

In this case we consider due process and equal protection challenges to Section 454.-465.1, RSMo Supp.1993. That statute creates a legal obligation in a parent to repay the state for payments of public assistance made by the state for the benefit of a child whose parent has not fulfilled his or her support obligation. The trial court found the statute constitutional and entered a monetary judgment for the state. Our jurisdiction is founded on the constitutional challenges to the statute. Mo. Const. art. V, § 3. We hold that the trial court applied Section 454.-465.1 constitutionally in this case. The judgment of the trial court is affirmed.

## I.

Jennifer Ann Cross and Kenneth Dycus conceived a child out of wedlock. The child was born August 6, 1990. Cross applied to the division of family services for Aid to Families with Dependent Children (AFDC) and assigned her rights to support from Dycus to the state. Section 208.040.2(2), RSMo Supp.1993. Cross received AFDC from September, 1990 until December, 1990, and from June, 1991 until October, 1992.[1]

On July 9, 1992, Dycus brought this action to declare his paternity and for custody of the child. The state intervened asking the trial court to set the amount of Dycus' debt to the state. Prior to trial Dycus and Cross settled their dispute and entered into a joint stipulation. Based on the stipulation, the trial court awarded the parties joint custody of the child, established a visitation schedule, and determined that neither parent owed the other child support.

Dycus did not agree, however, to the state's claims for reimbursement under Section 454.465.1. The trial court conducted a hearing over three days on those issues. The state produced evidence that it had paid Cross $5,085 in AFDC funds and that of the $234 in AFDC Cross received each month, $136 was for child support. The trial court heard Dycus' claims that Cross made fraudulent claims for AFDC eligibility during the period of the state's payments, received evidence of Cross' ability to contribute to the child's support and admitted Dycus' evidence of his income and his ability to pay child support during the period of the AFDC payments.

After hearing the evidence, the trial court assessed child support against Dycus at $100 per month for the periods of AFDC payments prior to June 1992, and $136 per month from June through October of 1992. In sum, the trial court reduced the state's $5,085 claim to $2,280 and ordered Dycus to pay that amount.

## II.

### A.

At oral argument, Dycus' counsel announced that she had not tried the case nor drafted briefs on her client's behalf, that she had "grabbed this case for the first time last week" and that "I am just going to try and wing it."

█ The opportunity to appear before this Court on behalf of a client carries with it a serious obligation to prepare to argue the points raised on appeal fully. Oral argument has long served to permit the Court and counsel a frank discussion of the primary issues raised in a case. At its best, oral argument forces the parties to hone those issues before the Court and allows the judges to test their tentative legal conclusions subject to counsels' guiding and correcting presence. In anticipation of helpful argument, each of the judges of this Court comes to oral argument having read the parties' briefs and prepared to discuss the important points raised by the case. Where counsel is either unwilling or unable to prepare to argue the case, we suggest that counsel submit the case on the briefs and record.

### B.

Section 454.465.1 creates a legal obligation in a parent to repay the state for payments of public assistance made by the state for the benefit of a child whose parent does not fulfill his or her support obligation.

1. For purposes of sections 454.460 to 454.505, a payment of public assistance by the division of family services to or for the benefit of any dependent child, including any payment made for the benefit of the caretaker of the child, creates an obligation, to be called "state debt", which is due and owing to the department by the parent, or parents, absent from the home where the dependent child resided at the time the public assistance was paid....

Where a previously issued judicial order determines a parent's support obligation "the

---

1. Cross began receiving AFDC in September, 1990. In December, 1990, she moved to the state of Washington to live with Dycus. The AFDC payments stopped when Cross left Mis-

souri and resumed in June, 1991, when she returned to this state. Cross continued to receive AFDC payments until October, 1992.

state debt of that parent shall be an amount equal to the obligation ordered by the court ... up to the full amount of public assistance." Section 454.465.1(1), RSMo Supp. 1993. In the absence of a judicial order of child support, Section 454.465.1(2) permits the director of the division of family services ("the director") to set state debt administratively.

(2) Where no court order covers a parent's support obligation to a dependent during a period in which the division of family services provided public assistance to or for the benefit of that dependent, the state debt may be set or reset by the director in an amount not to exceed the amount of public assistance so provided by the division of family services.

## C.

■ Initially, Dycus claims that Section 454.465 violates his right to procedural due process in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Missouri Constitution. His procedural due process claim is two-pronged: First, he claims that Section 454.465 is vague and ambiguous because it fails to provide guidance for a judicial determination of state debt. Second, Dycus asserts that the statute fails to advise him of the "procedure and factors to be used in determining accrued state debt." (Brief of Appellant.)

Dycus relies primarily on *Jackson v. Rapps*, 947 F.2d 332 (8th Cir.1991), to support his due process argument. In *Jackson*, noncustodial parents brought a class action claiming that 45 C.F.R. § 302.53(a)(1990) (now 45 C.F.R. § 302.56), required the director to consider eight regulatory factors[2] and that the director's failure to do so violated both the Supremacy Clause and the parents' due process rights. The evidence showed that the director of the division of family services considered only the amount of AFDC actually paid by the state and set state debt in that amount. The Eighth Circuit held for the plaintiff parents. "[T]he supremacy clause prevents the implementation of a reimbursement policy other than one in accordance with existing federal regulations. Our decision makes it unnecessary to reach the due process issues." *Jackson*, 947 F.2d at 337.

*Jackson* speaks to Supremacy Clause issues. It is inapposite to Dycus' due process point.

Dycus' assertion that Section 454.465 violates procedural due process because it fails to provide sufficient guidance for a judicial determination of state debt misunderstands the nature of the trial court proceedings in this case. The state sought to intervene in an action filed by Dycus to establish his paternity and award him custody of the child born to Cross. The state's motion averred no more than that the state made AFDC payments for the support of the minor child and that the state sought intervention to protect its interests. The motion prayed that the trial court permit the state's intervention and asked the court "*to set* the amount of state debt owed by respondent [Dycus], and to determine a periodic payment schedule whereby respondent shall repay the state debt." [Emphasis added.] The trial court sustained the motion over Dycus' objection.

The only role played by Section 454.465 in this case was to establish the state's right to collect its debt from Dycus. Prior to the trial court's hearing, neither the director nor the court had set state debt, nor had either invoked subsection (1) or subsection (2) of Section 454.465.1 for that purpose. Indeed, the very reason for the state's intervention was to achieve judicially what Section 454.-

---

**2.** 45 C.F.R. § 302.53(a) (1990) requires the state's formula to consider:

(1) All earnings, income and resources of the absent parent including real and personal property;

(2) The earnings potential of the absent parent;

(3) The reasonable necessities if the absent parent;

(4) The ability of the absent parent to borrow;

(5) The needs of the child for whom support is sought;

(6) The amount of assistance which would be paid to the child under the full standard of need of the State's IV–A plan;

(7) The existence of other dependents;

(8) Other reasonable criteria which the State may choose to incorporate.

465.1(1) and (2) accomplish without a judicial decision. Because Section 454.465 does not establish any procedure for a judicial determination of state debt, the statute cannot violate Dycus' due process rights.

■ If Section 454.465 is infirm, as Dycus claims, it is infirm because it is silent on the issue of the standards and procedures a court must employ to set state debt. Procedural due process requires notice and an opportunity to be heard. The trial court provided Dycus a full hearing; thus, his claim must be one relating to notice. He asserts that neither the statute nor the court informed him of the standards against which the court would measure the evidence and that this silence left him uncertain as to the allocation of the burden of proof. These claims are specious on their best day.

First, the state filed notice of its intent to intervene and informed Dycus of the amount it claimed as state debt. Dycus filed suggestions in opposition to the state's intervention in which he admitted that "[t]he State's right to ... collect unreimbursed debt is authorized by statute." (Appellant's Suggestions in Opposition to Motion Requesting Leave to Intervene.)

Second, Dycus could have, but apparently did not, utilize this state's liberal discovery rules to obtain additional factual information about the state's claim for state debt.

Third, Dycus himself raised the Eighth Circuit's decision in *Jackson* for the trial court, both orally and in writing, claiming that the state could not seek full AFDC reimbursement in a judicial setting without violating the Supremacy Clause. Dycus' reliance on *Jackson* showed unequivocally that he knew of the appropriate standard for a determination of state debt. Moreover, the trial court was aware of the *Jackson* stan-

dard; over the state's objection, it permitted Dycus to put on evidence consistent with 45 C.F.R. 302.56.

Seen in this light, Dycus' complaint is reduced to a claim that the state failed to produce sufficient evidence before the trial court to establish state debt. The success of Dycus' contention depends on a holding that the state had the burden of proof both for its claim and Dycus' evidence in mitigation. We disagree.

■ The law in this state as to burden of proof is clear and designed to assure that hearings on contested matters provide the parties with predictable rules of procedure. The party asserting the positive of a proposition bears the burden of proving that proposition. *Anchor Centre Partners Ltd. v. Mercantile Bank, N.A.*, 803 S.W.2d 23 (Mo. banc 1991). Section 454.465.1 establishes a debt owed the state by an absent parent for whom the state makes payments of public assistance. The state was required to produce competent evidence that Cross had assigned her support rights to the state and that the state had paid $5,085 in AFDC to Cross for benefit of the child. The state did so. At this point the state had put forth sufficient evidence to withstand a motion for a directed verdict (which Dycus did not offer) and the burden shifted to Dycus to show why he did not owe that amount. Aware of *Jackson*, the trial court permitted Dycus to present evidence not only of his ability to provide support for the child and his voluntary contributions to the child's support, but also evidence supporting Dycus' claims that Cross procured AFDC through fraud and that she had financial assets of her own for the child's support. Dycus' evidence essentially covered the mitigating factors set out in 45 C.F.R. § 302.56(c)(1).[3]

---

**3.** 45 C.F.R. 302.56 provides in pertinent part:
  (a) Effective October 13, 1989, as a condition of approval of its State plan, the State shall establish one set of guidelines by law or by judicial or administrative action for setting and modifying child support award amounts within the state.
  (b) The state shall have procedures for making the guidelines available to all persons whose duty it is to set child support award amounts.

  (c) The guidelines established under paragraph (a) of this section must at a minimum
  (1) Take into consideration all earnings and income of the absent parent:
  (2) Be based on specific descriptive and numeric criteria and result in a computation of the support obligation; and
  (3) Provide for the child(ren)'s health care needs, through health insurance coverage or by other means.

After hearing all of the evidence, the trial court reduced the state's claim for state debt from $5,085 to $2,280.[4] This *judicial* decision was founded on sufficient evidence, relevant statutory and case law and knowledge of federal regulations. The hearing that produced the evidence upon which the trial court relied followed time-honored procedures designed to assure due process. There was simply no procedural due process infirmity in these proceedings.

## D.

Dycus also advances a substantive due process claim. He urges that he has a liberty interest in the proceeds of his labors and alleges that the trial court impermissibly violated his "fundamental property rights" in the fruits of this labor. Dycus asks this court to undertake strict scrutiny review and asserts that the statutes at issue cannot withstand such judicial inspection.

Dycus' point is devoid of merit. The "fundamental right" upon which Dycus' assertion rests is a right to avoid supporting his minor child. His attempt to adorn his position with constitutional logos is unavailing.

Dycus has a common law duty to support his child. *State ex rel. Division of Family Services v. Standridge,* 676 S.W.2d 513, 515 (Mo. banc 1984). He has no fundamental right to avoid that duty. The constitution requires only that the process by which that debt is set meet procedural due process requirements. As we have previously discussed, the process at issue here met those requirements. The point is denied.

## E.

Dycus next urges that Section 454.465 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Missouri Constitution. He posits that the statute creates two classes of obligor parents and discriminates against his class without compelling reasons. Again, Dycus asks this Court to undertake strict scrutiny review.

As we understand Dycus' argument, he claims that parents whose child support obligation is set through paternity or dissolution actions have their support obligations set in accordance with standards established in Sections 210.828.2 and 210.841.6, RSMo Supp.1993 (paternity), and Section 452.340, RSMo 1986, and Rule 88.01, Form 14 (dissolution). And where an absent parent is brought before an administrative hearing officer and assessed child support and/or state debt, that parent receives the benefit of Section 454.480, RSMo Supp.1993. That statute establishes standards for administrative determinations of minimum support obligations. Dycus considers these parents members of the favored class.

The disfavored class in which Dycus claims membership consists of absent parents who are assessed state debt in *judicial* proceedings. He contends that this class of parents does not have the benefit of any standards that serve to check the discretion of the judge in setting state debt.

We reject Dycus' equal protection claim. The trial court heard Dycus' evidence relating to the factors mitigating debt under the federal regulations and reduced the state's claim accordingly. Dycus' legal treatment at the hands of the trial court was virtually identical to that afforded other child support litigants by statute, case precedent, regulation and rule. Our independent review of the record shows that the monthly support amounts found by the trial court are consistent with Dycus' gross income testimony and with the support guidelines of Rule 88.01, Form 14, which provides a specific descriptive and numeric criteria for setting child support. Under these facts, Dycus cannot claim the disparate treatment that is a required precondition to an equal protection claim.

## F.

Next, Dycus claims that the trial court erred in requiring him to pay state debt for the month of October, 1992. He founds this argument on the trial court's September, 1992 order decreeing that neither parent owed child support.

---

4. The trial court reduced the award of state debt to the amount of child support provided and the state did not challenge this on appeal. The stat-

ute, however, permits the state to recover payments made "for the benefit of the caretaker of the child." § 454.465.1.

Dycus and Cross settled the custody and paternity action and agreed by stipulation that neither would be liable to the other for future child support payments. The trial court entered an order accepting the settlement of the case on September 22, 1992; Cross received an AFDC payment in October, 1992.

Dycus claims that Section 454.465.1(1) relieves him of any state debt obligation for October. Section 454.465.1(1) provides: "Where there exists a court order directed to a parent which covers that parent's support *obligation* ... the state debt of that parent shall be an amount equal to the obligation ordered by the court ... up to the full amount of public assistance paid." Dycus reasons that the Court's order of September 22 relieves him of any requirement to reimburse the state for AFDC paid after that date.

Dycus failed to preserve this issue for appellate review, raising it initially on appeal. We review for manifest injustice or miscarriage of justice. Rule 84.13(a).

Section 454.465.2, RSMo Supp.1993, states:

No agreement between any obligee and any obligor regarding any duty of support, or responsibility therefor, or purporting to settle past, present, or future support obligations either as settlement or prepayment shall act to reduce or terminate any rights of the division to recover from that obligor for public assistance provided.

By the plain terms of the statute, the settlement of the support issue could not relieve Dycus of his obligation to reimburse the state. There being no manifest injustice or miscarriage of justice, the point is denied.

### G.

■ Dycus' final point contends that the trial court erred in entering judgment for the state because the state failed to put forth evidence required by 45 CFR § 302.56 "regarding appellant's earnings and income" and the trial court "failed to make its determination of appellant's obligation to pay accrued state debt based on specific descriptive and numeric criteria." (Brief of Appellant.)

Dycus claims the statute, federal regulations, and holding in *Jackson* construing these varying state and federal policies, require the state to place into evidence the earning capacities of both parents. He claims the failure of the state to place any evidence before the court except the amount of AFDC benefits paid, is fatal to its claim for state debt.

*Jackson* involved an *administrative* determination of state debt. This case is about a *judicial* determination of state debt. The distinction is significant. We assume that the trial courts of this state know the law. The trial court's conduct here justified that assumption.

As we have previously said, the state made a submissible case of the existence of state debt when it showed that Cross assigned her right to support to the state. The state made a submissible case of the amount of state debt when it showed the amount of AFDC it had paid to Cross on behalf of the child. At that point, the burden shifted to Dycus to show by evidence of his earnings and income that he owed a lesser amount. The trial court admitted that evidence in conformity with 45 C.F.R. § 302.56 and set state debt accordingly. To the extent there was a failure of proof of Dycus' earnings and income, the burden of that failure falls separately on Dycus.

Dycus' claim that the trial court failed to follow "specific descriptive and numeric criteria" in determining state debt is similarly without merit. The trial court's order setting state debt listed Dycus' sources of income for the period of AFDC payments to Cross. Our independent review of the record shows that the monthly support amounts found by the trial court are consistent with Dycus' gross income testimony and with the support guidelines of Rule 88.01, Form 14, which provides a specific descriptive and numeric criteria for setting child support. The point is denied.

### III.

The judgment of the trial court is affirmed.

All concur.