**STATE of Kansas, SECRETARY of SRS, Respondent,**

v.

**Dennis R. BRIGGS, Appellant.**

**No. WD 50923.**

Missouri Court of Appeals,
Western District.

April 16, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 28, 1996.

Application to Transfer Denied
Aug. 20, 1996.

Before HANNA, P.J., and SMART and ELLIS, JJ.

HANNA, Presiding Judge.

Dennis R. Briggs appeals from the trial court's judgment in favor of the respondent, State of Kansas, Secretary of Social Rehabilitation Services (Kansas SRS), for reimbursement of public assistance given by Kansas SRS to Mr. Briggs' minor children in the amount of $69,984.19. The petition for reimbursement was brought pursuant to the Uniform Reciprocal Enforcement of Support Act, Kan. Stat. Ann. §§ 23–451 to –491 (1994)[1].

The marriage between Mr. Briggs and Carolyn A. Briggs was dissolved by a Kansas court in January 1986. The parties were awarded joint legal custody of their three minor children. Primary residential custody of the children was placed with Mr. Briggs, subject to reasonable visitation by Ms. Briggs. No child support was awarded.

On May 21, 1990, the district court of Greeley County, Kansas issued a journal entry by which the children were temporarily placed in the custody of Kansas SRS. Both the children and Ms. Briggs appeared at the hearing and stipulated that the children were in need of care. Mr. Briggs did not make an appearance.

On November 19, 1992, Kansas SRS filed a Uniform Reciprocal Enforcement of Support Act (URESA) Petition with the district court of Finney County, Kansas, naming Mr. Briggs as the defendant. The caption named the plaintiff as State of Kansas, Secretary of SRS, assignee of the minor children. In this petition, Kansas SRS alleged that the children were entitled to support from Mr. Briggs, who had refused or neglected to provide reasonable support for his children. The petition further alleged that Mr. Briggs was believed to be living in Missouri and that Kansas SRS was entitled to reimbursement in the amount of $69,984.19. Judge Stephen Nyswonger of Finney County, Kansas signed the URESA Certificate and Order the same day.

Roy W. Brown, Kearney, for appellant.

Don L. Cowan, Kansas City, for respondent.

1. Kansas has subsequently repealed the Uniform Reciprocal Enforcement of Support Act as Revised in 1968 and enacted the Uniform Interstate Family Support Act, K.S.A. § 23–9,101 to –9,903 (1995), effective July 1, 1995.

The URESA petition was filed in Harrison County, Missouri on May 4, 1994. Mr. Briggs was served on May 13, 1994. Jo–Ellen Horn, a licensed Missouri attorney, entered an appearance on May 19, 1994, on behalf of Kansas SRS. Mr. Briggs filed a motion to dismiss, challenging the validity of the petition and the court's jurisdiction. After a hearing, which focused on the fact that the petition was not signed by an attorney, the court denied Mr. Briggs' motion.

The cause was heard on December 2, 1994. Mr. Briggs again objected to the court's jurisdiction, noting the absence of any attorney's signature on the petition. He also objected on the ground that there was no documentation concerning the mother's and father's ability to pay, nor any sworn testimony. The court overruled these objections. Neither party presented any further evidence, and the court granted judgment in favor of Kansas SRS in the amount of $69,984.13.

Mr. Briggs filed a motion to set aside and/or amend the judgment. He renewed his jurisdictional objections and filed tax returns for 1991 and 1992, requesting that the court reconsider the amount of the judgment. The court denied his motion. Mr. Briggs appeals.

In his first point, Mr. Briggs contends that the trial court erred in ruling that it and the district court of Kansas had jurisdiction in this matter. Mr. Briggs has asserted four subpoints in support of his first argument.

In his first subpoint, Mr. Briggs argues that the courts lacked jurisdiction because the URESA petition was not filed or prosecuted by the prosecuting attorney of Finney County or the Kansas Attorney General. In support of his position Mr. Briggs relies on K.S.A. § 23–462, which provides:

If this state is acting as an initiating state the prosecuting attorney *upon the request of* the court or the state department of social welfare shall represent the obligee in

any proceeding under this act. (emphasis added).

Mr. Briggs contends that because Kansas is the initiating state, this provision required the prosecuting attorney of Finney County or the Kansas Attorney General to represent Kansas SRS and file the petition. According to Mr. Briggs, because no attorney signed the petition, no court could exercise jurisdiction.

 The primary rule of statutory construction requires a court to ascertain legislative intent by considering the plain and ordinary meaning of words used in the statute, and when the language of a statute is clear and unambiguous, there is no room for construction. *Jones v. Director of Revenue,* 832 S.W.2d 516, 517 (Mo. banc 1992). Mr. Briggs' interpretation of the statute disregards the phrase "upon the request of", arguing that this statute means that the prosecuting attorney of Kansas must always represent the obligee.

The clear meaning of the provision requires that the Kansas prosecuting attorney represent the obligee only if requested to do so by the court or the state department of social welfare. Nothing in this provision required the prosecuting attorney of Finney County or the Kansas Attorney General to file the URESA petition or represent Kansas SRS.

 K.S.A. § 23–458 provides that if a state or political subdivision furnishes support to an individual obligee it has the same right to initiate a URESA action as the individual obligee for the purpose of securing reimbursement of support. Kansas SRS filed the URESA petition to secure reimbursement of public assistance provided to the three children. As Mr. Briggs owes a common law duty and obligation to support his minor children, they are obligees within the meaning of K.S.A. § 23–451(f). *See State ex rel. Division of Family Servs. v. Standridge,* 676 S.W.2d 513, 515 (Mo. banc 1984). Thus, Kansas SRS was entitled to file this petition to secure reimbursement of support.[2]

---

**2.** Furthermore, if there was error committed by permitting the filing of the URESA petition without an attorney's signature, such error was cured by the appearance of Jo–Ellen Horn, a Missouri

licensed attorney, on behalf of Kansas SRS before the Harrison County court. See *Arizona ex rel. Painter v. Painter,* 238 Ill.App.3d 796, 179 Ill.Dec. 466, 470, 606 N.E.2d 298, 302 (1992).

The Kansas district court forwarded the petition to Harrison County, Missouri in accordance with K.S.A. § 23–464. Personal and subject matter jurisdiction were proper in the circuit court of Harrison County, Missouri, where the enforcement action was sought. § 454.100, RSMo 1994; *Gallup v. Gallup*, 873 S.W.2d 336, 337 (Mo.App.1994). Once the petition was received by the Harrison County court, acting as the responding state, it was required to docket the cause and notify the prosecuting attorney under § 454.180, RSMo 1994. The Harrison County court did this. Subsequently, a Missouri licensed attorney entered her appearance on behalf of Kansas SRS. This petition was properly before the Harrison County court. Mr. Briggs' first subpoint is denied.

In his second subpoint, Mr. Briggs argues that Kansas SRS sought reimbursement as assignee of the children in that it claimed that the children had made an assignment of their rights and/or had given Kansas SRS the authority to collect support. Mr. Briggs contends that the petition should have been dismissed because Kansas SRS failed to attach the alleged assignment and the children could not assign their rights as minors. Kansas SRS asserts that it was not proceeding under an assignment theory, but rather under the common law theory of reimbursement of necessaries.

 The character of the cause of action must be determined from the facts stated in the petition and not by the prayer or the name given the action by the pleader. *McKinnon v. McKinnon*, 896 S.W.2d 90, 91 (Mo.App.1995). The caption of the petition identifies Kansas SRS as the assignee of the minor children. It further classifies this case as an IV–D AFDC/IV–E Foster Care case. Nowhere does the petition state that Kansas SRS is seeking reimbursement of necessaries. Rather, the petition asserts that Kansas SRS is entitled to reimbursement in the amount of $69,984.19. The records attached to the petition indicate that this amount is the entire amount given by Kansas SRS in support of the children. While practically speaking there is probably little, if any, difference between this amount and an amount labeled as "necessary", a fair reading of this petition demonstrates that it is an action for the reimbursement of the entire amount of AFDC benefits paid by Kansas SRS to the children, not a common law action for reimbursement of necessaries.

Mr. Briggs contends that the court erred by not dismissing the petition because Kansas SRS failed to attach the alleged assignment and the children, as minors, could not lawfully enter into an assignment. We cannot agree with Mr. Briggs' argument, which, when extended to its logical conclusion, would prevent Kansas SRS from ever recovering reimbursement provided to minor children who are wards of the state.

In *Dycus v. Cross*, 869 S.W.2d 745, 749 (Mo. banc 1994), the court required the state to produce competent evidence that the mother, as a recipient of AFDC benefits, had assigned her support rights to the state and that it had paid AFDC benefits to the mother for the benefit of the child. Without articulating what constitutes competent evidence of an assignment, the court found that the state had met its burden. *Id.*

Under K.S.A. § 39–709(c), by applying for or receiving AFDC, the applicant or recipient is deemed to have assigned to the secretary of social and rehabilitative services any and all rights to support from any other person. This assignment of support rights automatically becomes effective upon the approval for or receipt of AFDC. *Id.* Mr. Briggs has provided us with no authority to support his contention that such a deemed assignment is not effective as to minor children. He also provided no authority for the position that he is a party entitled to attack the effectiveness of such an assignment.

 Here, the records presented by Kansas SRS demonstrate that it provided monthly AFDC benefits in support of Mr. Briggs' minor children. It is true that Kansas SRS did not identify the foster home or institution in which the children were living. Nor did it

Her appearance constituted certification that her representations were based on reasonable inquiry, well grounded in fact, and warranted by existing law or a good faith argument for an extension of law. *Id.* Consequently, the error, if any, was harmless.

attach any document demonstrating that the minor children themselves, or their current guardian, had assigned their support rights. Such documentation, although perhaps helpful, was not necessary. The mere receipt of AFDC benefits by or on behalf of the children created an assignment of the children's rights to support from their parents. K.S.A. § 39–709(c). The records showing that Kansas SRS provided AFDC benefits in support of the children provided competent evidence that an assignment had been made by or on behalf of the minor children to Kansas SRS. *Dycus,* 869 S.W.2d at 749. His second subpoint is denied.

In his third subpoint, Mr. Briggs argues that neither court had jurisdiction because Kansas SRS failed to provide any verified testimony to the Kansas district court concerning the amounts allegedly paid to the children and did not provide such documents until after the petition was certified and authenticated.

K.S.A. § 23–461 requires that the URESA petition be verified. The Uniform Support Petition here was filed in Kansas on November 19, 1992, and it was verified. The attached documentation, which was dated December 16, 1992, was also verified.

The petition was certified pursuant to K.S.A. § 23–464 on November 19, 1992. By certifying the petition, the initiating court found that the petition set forth sufficient facts from which it could be found that Mr. Briggs owed a duty of support. K.S.A. § 23–464. Pursuant to this certification the court ordered that the required number of copies of the certificate, petition, testimony, and copies of Kansas' reciprocal support statute be transmitted to the Division of Child Support Enforcement in Jefferson City, Missouri.

The URESA petition and all of the required documentation were referred to Harrison County, Missouri on May 4, 1994. Pursuant to § 454.180, RSMo 1994, the cause was docketed and referred to the prosecuting attorney. Mr. Briggs was served on May 13, 1994. A full hearing on the matter was held on December 12, 1994. The verified records presented by Kansas SRS were sufficient to show that it had been assigned the children's support rights and had paid $69,984.19 in AFDC benefits to support the children. Mr. Briggs was given the opportunity to show that he did not owe this amount. Mr. Briggs failed to present any such evidence.

■ As with all of his other arguments, Mr. Briggs has failed to show how he was prejudiced by this alleged error. This is especially true given that it is the responding state that determines whether the obligor owes a duty of support, not the initiating state. § 454.070 RSMo 1994; *Michigan Dep't of Social Servs. ex rel. D.H. v. K.S.,* 875 S.W.2d 597, 599 (Mo.App.1994). Even though Kansas, as the initiating state, made the preliminary determination concerning Mr. Briggs' obligation to provide support, thereafter it acted only as a procedural conduit by transferring the petition to the responding court. It was the Missouri court, pursuant to Missouri law, that determined that Kansas SRS was entitled to reimbursement. Mr. Briggs failed to show how the later dates on the attached documentation materially affected the merits of this action. Rule 84.13(b). This subpoint is denied.

In his final subpoint, Mr. Briggs contends that the journal entry concerning his children's placement with Kansas SRS does not reflect that he was ever provided notice and an opportunity to contest this placement in violation of his due process rights. He further argues that the entry does not provide an adequate record as to whether Kansas SRS had a right to reimbursement.

Mr. Briggs notes that he was given "primary residential custody" of the children in the original Kansas divorce decree[3]. He then states that "[w]ithout explanation, the children subsequently appear" to have been in Ms. Briggs' custody when, "for reasons not entirely clear" the district court of Greeley County, Kansas temporarily place the children in the custody of Kansas SRS.

**3.** Although Mr. Briggs did have primary residential custody, the parties shared joint legal custody of the children.

Mr. Briggs contends that Kansas SRS had the burden of showing the reasons for the removal of custody from him, which it failed to do. In *State ex rel. Division of Family Servs. v. Standridge*, 676 S.W.2d 513 (Mo. banc 1984), the Missouri Division of Family Services (DFS) filed suit against the father to recover monies paid to his wife in AFDC benefits. The court held that DFS was required to prove that the wife's removal of the parties' children from their father's custody to another state was justified or consented to by the defendant. *Id.* at 516. The court placed the burden of proof on the state because its assignee was the parent who removed the children from the state.

Although the parties were merely separated, the court cited a general rule, which provides that when "parties divorce and the father is awarded custody and the mother later takes the children from him, if the father is not at fault in causing their removal and does not consent to their taking, he is not liable for providing the children's necessities." *Id.* In such a case the father's consent will be implied if the mother remains in the same jurisdiction as the father and he does not attempt to regain his rightful custody in the courts. *Id.*

There is a significant difference between the situation before us and the one in *Standridge*. Specifically, in *Standridge*, the mother removed the children from the father's home and left the state. Her actions required that the state prove the father was not at fault for their removal and that he did not consent to their taking. Here, Ms. Briggs remained in Kansas with the children. Mr. Briggs left the jurisdiction where the parties had lived and the original custody decree was entered. Mr. Briggs left Kansas, where his children resided, and moved to Missouri. He made no effort to bring the children with him. He maintains that there was no further contact with his children. Mr. Briggs offered no showing of any attempt by him to reestablish contact with his children. Further, the children were removed from the mother's custody three years before the URESA proceeding. Yet, Mr. Briggs did nothing to find out how or where his children were.

We conclude that Mr. Briggs abandoned his children. His actions and inactions will not cause the burden of proof to be shifted to the state. We place upon the parent who leaves the burden of demonstrating why he left and why he did not bring the children with him.

Article IV, Section 1 of the United States Constitution precludes any inquiry into the merits of the cause of action, the legal consistency of the decision, or the validity of the legal principles upon which a judgment is based, and requires Missouri courts to give full faith and credit to judgments of the courts of sister states, unless it can be shown that there was a lack of jurisdiction over the subject matter, failure to give due notice, or fraud in concoction of the judgment. *Estate of Pettit v. Levine*, 657 S.W.2d 636, 640–41 (Mo.App.1983).

A judgment entered by a foreign court is presumed to be a judgment in a matter in which the court had jurisdiction over the parties and subject matter, and also that the court followed its laws and entered a valid judgment in accordance with the issues made in the case. *Id.* at 641. The burden is on the person resisting recognition of this judgment to present evidence sufficient to rebut that presumption. *Kilgore v. Kilgore*, 666 S.W.2d 923, 932 (Mo.App.1984).

Mr. Briggs presented no evidence to overcome this presumption. He offered no evidence that he was not notified of the May 21, 1990 hearing, in which the children were placed in the custody of Kansas SRS. The fact that he did not appear does not prove that he did not have prior notice of the hearing. The blanket assertion by Mr. Briggs' attorney that Mr. Briggs was not a party to that proceeding, without any evidence to support his contention, is not sufficient to overcome the presumption that the judgment was valid. Consequently we give full faith and credit to this judgment placing the children with Kansas SRS. Mr. Briggs also did not offer any evidence that the custody order had lapsed or was modified. There was sufficient evidence showing that the children were rightfully placed with Kansas SRS on May 21, 1990, and that Kansas

SRS had been supporting them since that time. The fourth subpoint is denied.

Mr. Briggs' first point is denied.

In his second point, Mr. Briggs argues that the trial court erred in granting judgment against him for the entire amount of the assistance payments and in overruling his motion to set aside and/or amend the judgment. He also contends that Kansas SRS failed to demonstrate that it complied with federal regulations in determining the minimum support payments that a parent should contribute toward the support of a dependent child.

■ The duties of support enforceable under URESA are those that are imposed or imposable under the law of the state where the obligor was present during the period for which support is sought. § 454.070 RSMo 1994; *Michigan Dep't of Social Servs. ex rel. D.H. v. K.S.*, 875 S.W.2d 597, 599 (Mo.App. 1994). The obligor is presumed to have been present in the responding state during this period. § 454.070. Mr. Briggs is a resident of Missouri, and is presumed to have been present in Missouri throughout the period for which support is sought. Thus, Missouri law controls in determining support obligations. *Michigan Dep't of Social Servs. ex rel. D.H.*, 875 S.W.2d at 599.

Section 454.465.1, RSMo 1994, creates a legal obligation in an absent parent to repay the state for payments of public assistance made by the state for the benefit of a child whose parent has not fulfilled his or her support obligation. *Dycus*, 869 S.W.2d at 747. Thus, not only did Mr. Briggs have a duty to support his minor children, *id.* at 750, he also had a legal duty to repay Kansas SRS for the AFDC benefits that it provided as support for his children. § 454.465.1.

Mr. Briggs does not deny either of these legal obligations, but instead argues that he cannot be held liable for the full amount, citing *Jackson v. Rapps*, 947 F.2d 332 (8th Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). Specifically, he contends that the burden was on Kansas SRS to demonstrate that the amount of the support obligation was determined in accordance with federal regulations, which includes the consideration of the absent parent's earnings, income, resources, and reasonable necessities.

In *Jackson*, noncustodial parents brought a class action challenging the validity of the policy and practice of the Missouri Division of Child Support Enforcement (Division) to seek reimbursement from noncustodial parents of the entire amount of AFDC benefits paid in the absence of a court ordered obligation, without considering the eight regulatory factors presented in 45 C.F.R. § 302.53(a)(1990) (now 45 C.F.R. § 302.56). *Id.* at 334. The Division's policy in administratively determining arrearages was to designate the entire amount of public assistance paid over the last five years as state debt unless a lower amount was negotiated with the noncustodial parent. *Id.*

The district court held that the Division's policy was preempted by the supremacy clause. *Id.* at 337. Consequently, when the Division administratively sets the state debt, it is required to do so using a formula meeting the criteria set forth in 45 C.F.R. § 302.53.[4] Mr. Briggs contends that *Jackson* requires Kansas SRS to prove that it complied with federal regulations in determining the amount of support it provided to the children.

This argument was rejected by the Missouri Supreme Court in *Dycus v. Cross*, 869 S.W.2d 745 (Mo. banc 1994). In *Dycus*, the appellant father claimed that the failure of the state to place any evidence before the court, except the amount of AFDC benefits

---

**4.** This provision required the state's formula to consider:

(1) All earnings, income and resources of the absent parent including real and personal property;

(2) The earnings potential of the absent parent;

(3) The reasonable necessities of the absent parent;

(4) The ability of the absent parent to borrow;

(5) The needs of the child for whom support is sought;

(6) The amount of assistance which would be paid to the child under the full standard of need of the State's IV–A plan;

(7) The existence of other dependents;

(8) Other reasonable criteria which the State may choose to incorporate.

paid, was fatal to its claim for state debt. *Id.* at 751.

In rejecting the father's claim, the court noted that *Jackson* involved an administrative determination of state debt, while the case before it involved a judicial determination of state debt, a distinction that the court found significant. *Id.* Here, we are also faced with a judicial determination of state debt, not an administrative one.

■ The court held that the state was required to produce competent evidence that the mother had assigned her support rights to the state and of the amount of AFDC benefits provided to support the children. *Id.* at 749. As we found in Mr. Briggs' second subpoint, Kansas SRS presented sufficient evidence to meet its burden. Consequently, the burden then shifted to Mr. Briggs to show by evidence of his earnings and income that he owed a lesser amount. *Id.* at 751.

Mr. Briggs was given the opportunity to present evidence of his ability to support his children, any voluntary contributions he gave for their support, as well as evidence that Ms. Briggs had assets to support the children. Such mitigating factors would have essentially covered the mitigating factors of § 302.56. *See id.* Mr. Briggs, however, declined to present any such evidence.

The trial court made its decision based upon the evidence it had before it. Mr. Briggs cannot now complain that the court did not consider his ability to pay when he failed to present any evidence concerning that issue at trial. Point denied.

The judgment is affirmed.

SMART and ELLIS, JJ., concur.